## C. F. CLOWERS v. STATE.

No. A-3281.   Opinion Filed Nov. 1, 1919.

Rehearing Denied Feb. 9, 1920.

(184 Pac. 790.)

(Syllabus.)

1. **RAPE—Evidence—Sufficiency.** In a prosecution for statutory rape. the evidence considered, and conviction affirmed.

2. **EVIDENCE—Predicate For Admission of Letter.** In a trial for statutory rape, a note or letter was properly admitted, where the prosecutrix testified that she received the same from the defendant, and there was proof that the same was in his hand-writing.

3. **RAPE—Improper Acts of Prosecutrix as Defense.** Proof that the female was guilty of improper relations with other men is no defense to the charge of statutory rape.

*Appeal from District Court, Hughes County;*
*Geo. C. Crump, Judge.*

C. F. Clowers was convicted of statutory rape, and he appeals. Affirmed.

*J. L. Skinner* and *Pruiett, Sniggs & Patterson,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty. Gen., for the State.

DOYLE, P. J.   C. F. Clowers was charged, in an information filed in the district court of Okfuskee county, with the crime of statutory rape, alleged to have been committed upon Alva Strain, a child under 16 years of age. On his application a change of venue was granted, and the case was duly transferred to Hughes county, where upon his trial he was convicted and his punishment fixed at imprisonment in the penitentiary for a term of five years. From the judgment rendered on the verdict, he appeals. The alleged errors will be considered in the order presented.

First.   It is contended that the evidence is insufficient to sustain the verdict and judgment of conviction. The record shows that at the time charged the defendant was principal of the school at Beardon; that he was a married man, about 29 years of age; that the prosecutrix attended said school, and at the time charged—March, 1917—she was under the age of sixteen years, her fifteenth birthday being in February, 1917. The prosecutrix testified in substance as follows:

That she had been attending school at Beardon since she was old enough to go to school, and during the years 1916 and 1917 the defendant was principal or superintendent, and there were four other teachers; that before the close of the term in 1916 the defendant began taking liberties with her, such as hugging and kissing her, and then soliciting her to permit him to have sexual intercourse with her, and she consented; that he arranged to have her meet him out in her father's orchard; that his first and second attempt to accomplish an act of sexual intercourse failed, because it hurt her; that the second week after school started in the fall of 1916 she met him by appointment in

her father's barn, and that was the first time he accomplished an act of sexual intercourse; that after that he frequently had sexual intercourse with her in a closet in the schoolhouse and also in the lodge room on the third floor of the schoolhouse, and during that term of school this occurred sometimes every day, and then three or four times a week; that he always used "rubbers," and said he used them to prevent babies from coming; that R. A. Johnston, Will Hendrix, and Opal Frogge told her that they had been watching and knew of her relations with Prof. Clowers, and that it had better be stopped; that unless she would give them the same privilege that she had given him they would tell it; that she refused to do that; that she informed defendant as to what they had said, and he said he ought not to have been so careless, but could not help it now; that they could not prove anything, and, if they did, he could sue them for slander. She also identified an unsigned note as one that she had received from him. No man had ever had sexual intercourse with her, except the defendant. Will Hendrix came into the closet one time after Prof. Clowers had left, and asked her what she was doing in there, and said he came in for a baseball bat or something.

R. A. Johnston testified that he was 17 years of age; that he attended the Beardon school during the years of 1916 and 1917, and was in the same grade as Alva Strain; that some time between the 24th of March and the 1st of April, 1917, he, with Opal Frogge and Bill Hendrix, went into a closet under the stair steps of the school building and found a pallet, and he picked up a comb that he knew belonged to the defendant, so they watched and a day or so later found the door of the closet locked, and they went outside and looked in the window, but could not see anything;

that they then went back up the stairway, where there was a hole inside the window; that they crawled into the hole one at a time, and when he looked C. F. Clowers and Alva Strain were having sexual intercourse; that they watched the door, and in five or six minutes Prof. Clowers unlocked the door and came out; then Bill Hendrix went into the closet to get a baseball bat, and Alva Strain was sitting in there on a box; that he saw her there, and Bill Hendrix spoke to her; that the next day, after the third period in the afternoon, he with the same two boys crawled into the same place, one at a time, and he witnessed another act of intercourse, and watched and saw that it was the same two persons; about two days later he again witnessed the same act at the same place and about the same time; that usually before this happened Prof. Clowers left the schoolroom by one door and Alva Strain would leave by the other door; that after they had observed this conduct seven or eight times he in the presence of the other two boys told Miss Strain that they were aware of what was taking place between her and Clowers in the closet below the stairway and that they would like for her to stop this conduct, and she held her face in her hands and thanked them and told them she would. His cross-examination was in part as follows:

"Q. Didn't Prof. Clowers catch you up in the closet with Alva Strain? A. He did not.

"Q. And didn't he call you and Will Hendrix into his library room and tell you of it? A. He did not.

"Q. And didn't he tell you that if he was a mind to he could put you in the penitentiary for what you were doing? A. He did not."

Bill Hendrix testified that in the month of March, 1917, he was present when R. A. Johnston picked up the comb from the pallet in the closet under the stairs, and he knew the comb belonged to Prof. Clowers, and the boys agreed to watch the place. The very next day Alva Strain left the schoolroom, and about three minutes later Prof. Clowers left, and he and Johnston and Frogge followed him; that about halfway up the steps there is a window that leaves an opening, and he crawled into this opening and looked into the closet and saw Prof. Clowers and this girl having sexual intercourse. The other boys, one after another, looked through this opening. When Prof. Clowers came out, he went into the closet for a baseball bat, and Alva Strain was sitting in there. He asked her what she was doing down there, and she said, "Nothing; I have been down here since the history class; I got so sleepy up there." That the next day they watched, and the same thing occurred about the same period in the afternoon; that he with the other boys observed this conduct seven or eight times during the month; that later he saw the defendant hug and kiss Alva Strain in the lodge hall; that one day, while she was up there waiting for him, they told her what they had observed, and she began to cry, and said that Prof. Clowers led her into it. On cross-examination he was asked:

"Q. About the 15th of March, did Miss Lucile Pendleton catch you and Alva Strain in an act of intercourse in that closet? A. She did not.

"Q. Now, just a short time before school was out, did Prof. Clowers have you and R. A. Johnston in the library room talking to you in regard to Alva Strain? A. No, sir; he did not.

"Q. Didn't he tell you in the library room that Miss Pendleton had caught you having intercourse with Alva

Strain, and that he caught R. A. Johnston, and that you were ruining yourselves and that girl? A. He did not."

The testimony of Opal Frogge was in substance the same as that of the witnesses Johnston and Hendrix. Other corroborating testimony was given, which we deem it unnecessary to state.

A number of witnesses were called, who testified to the defendant's good character. Miss Lucile Pendleton testified that she was one of the teachers at the Beardon school, where the defendant was superintendent; about the middle of March, 1917, she went upstairs to ring the bell at noon, and heard a noise, and looked into the middle room of the lodge hall, and saw Alva Strain lying on the floor with her dress up, and Bill Hendrix there with his trousers unbuttoned; that she said to them, "What does this mean?" and they never answered; and she said, "I am going to report this to Prof. Clowers;" that she did report it to Prof. Clowers that same evening; that after this she heard Prof. Clowers say to Will Hendrix and R. A. Johnston, "Boys, nothing like this can go in this school." On cross-examination she stated that she had never mentioned this occurrence to any other person.

Mrs. Clowers, wife of the defendant, testified that she had a conversation with the prosecutrix in reference to her conduct with Will Hendrix and R. A. Johnston, and told her that her husband had informed her that he caught R. A. Johnston having intercourse with her, and that Miss Pendleton had caught Will Hendrix having intercourse with her, and the prosecutrix cried and told her that it was true, and after the term ended the prosecutrix came to her house and stated to her that R. A. Johnston and Will Hendrix and

Opal Frogge had tried to get her to agree to lay their misconduct with her on Prof. Clowers. On cross-examination she stated she did not tell any person other than her husband what the prosecutrix told her.

As a witness in his own behalf the defendant testified that he was superintendent of the Beardon school for five years; that on or about the 10th day of March, 1917, Miss Pendleton, a teacher in the high school, reported to him that she had caught Bill Hendrix and Alva Strain having improper relations in the lodge room, and that day he called Bill Hendrix in the library and told him what Miss Pendleton had reported, and that he had better stop such conduct as that in the school; that about the 25th of March he went to ring the bell, and observed R. A. Johnston and Alva Strain passing into an anteroom of the lodge hall, and he walked over and saw Alva Strain sitting on the floor, and Johnston, with his back to him, seemed to be unbuttoning his pants; that she jumped up and hurriedly left; that he said to Johnston, "What does this mean? I am going to report you to your parents and take this matter up with the school board;" and he replied, "I am not in this;" and he asked him who was. Johnston said: "Bill Hendrix and Opal Frogge." After this he called the boys into the library and told them, "If this conduct is not stopped, you will ruin the life of this girl;" that he did not write the note introduced in evidence, and it was not in his handwriting. He denied ever having any improper relations with the prosecutrix.

The defense was made upon the theory that the defendant was the victim of a conspiracy entered into between the prosecutrix and these three schoolboys for the purpose of

shielding the boys. While no objection was interposed by the state, we are inclined to think that the evidence given on the part of the defendant, tending to show that the prosecutrix was guilty of improper relations with other witnesses for the state, was incompetent and inadmissible. If the defendant had sexual intercourse with the prosecutrix at a time when she was under 16 years of age, the offense was complete, since under the law she was incapable of consenting to such an act. Had it been established beyond a reasonable doubt, it would have been no defense to this charge of statutory rape against the defendant.

There can be no doubt that the verdict of the jury is amply supported, if the jury believed the evidence given on the part of the state, and we find no sufficient reason for believing that the evidence given on the part of the state, so far as the material facts are concerned, is not worthy of belief. It is apparent that justice has been done, and the judgment ought to be affirmed, unless the court in the course of the trial committed some error prejudicial to the substantial rights of the defendant.

The next error assigned is:

"The court admitted incompetent and irrelevant evidence, prejudicial to the rights of the defendant."

The state, over the objection of the defendant, read in evidence the following letter or note:

"My dear darling sweet darling: It has been so long since I have written to you dear that I must take the time. Dear I'm all blue over school. It seems that everything is going wrong and I'm afraid that we are going to have to go a little slow here for a few days until things settle down. I can't imagine why so many people are against the school and me. Dear I can't believe you will ever do or say a thing that will hurt me will you. Of course it would ruin us both. I have just placed absolute confidence in you and I still be-

lieve in you. Dear I know you could tell me lots of things if you had a chance. I would stay here another year if the people wanted me and would give me their support, but they are forcing me out you know that, and it hurts me, for I've done the best I could. I could gladly go if I had not become so fondly attached to you. Even though I do go it will not be the end of our relation if you remain to me a friend and confidant. If you do not, I will ever be to you. I sure hate to leave you and you know it. Dear tell me once more that you will stick to me. I can't help my attitude toward you for I have tried. Only you can stop me for I have fought that tendency like a demon. Answer to-day. Love and kisses."

Before the note was read in evidence, Alma Rogers testified she was 18 years of age; was a pupil at the Beardon school during the years 1916 and 1917; that she picked this note up from the floor in the library of the school and read it and kept it until the sheriff of Okfuskee county called for it; that she was familiar with the defendant's handwriting, and that the note was in his handwriting. The prosecutrix testified that it was one of the notes received by her from the defendant; that she knew his handwriting, and that this note was in his handwriting. Several other witnesses testified that they were familiar with the defendant's handwriting, and that this note was in his handwriting. While this note was not addressed to any one and was unsigned, we think that under the evidence offered it was clearly competent and was properly admitted in evidence.

The exceptions taken to certain instructions given by the court are not argued in the brief. We have, however, examined the instructions and find no error in them. They were as favorable to the defendant as he could have demanded.

Finding no prejudicial error in the record, the judgment is accordingly affirmed.

ARMSTRONG and MATSON, JJ., concur.