(December 4, 1922.)

STATE, Respondent, v. W. A. MYERS and V. A. FITZGERALD, Appellants.

[211 Pac. 440.]

ILLEGAL SEIZURE AS EVIDENCE—REMEDY OF AGGRIEVED DEFENDANT— NATURE OF PROCEEDINGS—NOT REVIEWABLE IN MAIN ACTION—NON-EXPERT EVIDENCE ON HANDWRITING — CONSPIRACY — ADMISSIBILITY OF EVIDENCE—ACTS AND DECLARATIONS OF CO-CONSPIRATOR—LACK OF CAPACITY TO COMMIT CRIME.

1. An application on behalf of a defendant in a criminal case to the trial court for the return of papers illegally seized creates a collateral issue, whether made prior to or at the time of the trial of the person against whom such papers are sought to be introduced as evidence. A proceeding for the recovery of such papers so taken is of a civil nature, and under our procedure is no part of a criminal action.

Points Decided.

2. Evidence, if competent and relevant, is admissible, irrespective of the manner in which it was obtained. If a defendant in a criminal action is entitled to the possession of papers which have been illegally seized and are about to be used as evidence against him, he must seek his remedy in an independent proceeding.

3. An application by the defendant in a criminal action for the return to him of papers illegally seized must be regarded as relating to an independent proceeding, and the decision of the trial court thereon cannot be reviewed on appeal in the main action.

(McCarthy, Dunn and Lee, JJ., do not concur in the first three paragraphs of syllabus.)

4. Property found in the possession of a defendant at the time of his lawful arrest, and relevant and material to the prosecution, may be retained by the prosecution and used against defendant on his trial, although there was no warrant of search and seizure at the time such property was taken.

5. One who is familiar with another person's handwriting from carrying on a correspondence with him, or from opportunities afforded in frequently handling writings known to have been written by such person, is competent as a nonexpert to give his opinion in regard to the genuineness of a letter purporting to have been written by such person. The weight of such evidence is a question for the jury.

6. Where a conspiracy relates to a series of crimes rather than to a single crime, evidence that one of the conspirators committed a crime similar to that for which both of two defendants are on trial is admissible.

7. The acts and declarations of a co-conspirator, done and made in furtherance of a common design, are admissible against all the other parties to the conspiracy, whether done or made in their presence or with their knowledge or not.

8. One who is personally incapable of committing the offense of receiving a bribe, on account of not being himself invested with official capacity, may be guilty of conspiring to commit the offense of bribery with another person who is capable of committing the offense.

Publisher's Note.

6. When evidence of other offenses is admissible in criminal prosecution, see notes in 105 Am. St. 976; 3 A. L. R. 1540.

Proof of other crimes in prosecution for bribery, see notes in 15 Ann. Cas. 195; Ann. Cas. 1915D, 181.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Charles F. Reddoch, Judge.

Appellants were convicted of the crime of conspiracy. Judgment *affirmed.*

Perky & Brinck, W. H. Casady and J. T. Pence, for Appellants.

It is error to refuse to return to a defendant property taken from him by unlawful search and seizure, and it is error to admit evidence upon the trial as to property so taken when timely application for its return is made. (*Weeks v. United States,* 232 U. S. 383, Ann. Cas. 1915C, 1177, 34 Sup. Ct. 341, 58 L. ed., 652, L. R. A. 1915B, 834; *Burdeau v. McDowell,* 256 U. S. 465, 41 Sup. Ct. 574, 65 L. ed. 1048; *Silverthorne Lumber Co. v. United States,* 251 U. S. 385, 40 Sup. Ct. 182, 64 L. ed. 319; *Gouled v. United States,* 255 U. S. 298, 41 Sup. Ct. 261, 65 L. ed. 647; *Tucker v. State,* 128 Miss. 211, 90 So. 845; *People v. Margelis,* 217 Mich. 423, 186 N. W. 488; *State v. Gibbons,* 118 Wash. 171, 203 Pac. 390; *Chicago v. Disalvo,* 302 Ill. 85, 134 N. E. 5; *State v. Simmons,* 183 N. C. 684, 110 S. E. 591; *Youman v. Commonwealth,* 189 Ky. 152, 224 S. W. 860; *Rippey v. State,* 86 Tex. Cr. 539, 219 S. W. 463; *Hughes v. State,* 145 Tenn. 544, 238 S. W. 588; *State v. Rowley* (Iowa), 187 N. W. 7; *Sioux Falls v. Walser* (S. D.), 187 N. W. 821; *State v. District Court,* 59 Mont. 600, 198 Pac. 362; *People v. Kinney,* 185 N. Y. Supp. 645; *State v. Peterson,* 27 Wyo. 185, 194 Pac. 342; *Amos v. United States,* 255 U. S. 313, 41 Sup. Ct. 266, 65 L. ed. 654.)

A distinction is made where the property so taken was unlawfully in the possession of the defendant. (*State v. Anderson,* 31 Ida. 514, 6 A. L. R. 527, 174 Pac. 124; *United States v. Welch,* 247 Fed. 239; *State v. Krinski,* 78 Vt. 162, 62 Atl. 37; *State v. Suitor,* 78 Vt. 391, 63 Atl. 182.)

The use in evidence of property so taken not only violates the provisions against unlawful search and seizure and

against self-incrimination, but also the constitutional guaranty of due process of law. (*State v. Height,* 117 Iowa, 650, 91 N. W. 935.)

Evidence of the commission by defendant of other crimes than that charged is irrelevant, and if not within the recognized exception, its admission is error. (Underhill, Crim. Ev., 2d ed., sec. 87; 1 Bishop, New Crim. Proc., sec. 1124, subd. 3; Wigmore, Evidence, sec. 305; *People v. Hurley,* 126 Cal. 351, 58 Pac. 814; *State v. Marshall,* 2 Kan. App. 792, 44 Pac. 49; 1 Wharton, Crim. Ev., 10th ed., p. 59; 16 C. J. 587; *State v. Eder,* 36 Wash. 482, 78 Pac. 1023.)

Roy L. Black, Attorney General, and James L. Boone, Assistant, for Respondent.

The proceeding for the recovery of an exhibit is independent of the criminal proceeding in which it was sought to use an exhibit as evidence. (*People v. Mayen* (Cal.), 205 Pac. 435.)

It was not error for the court to admit in evidence exhibits obtained without search-warrant. (*State v. Anderson,* 31 Ida. 514, 174 Pac. 124; *People v. Mayen, supra.*)

"Using Evidence Obtained by Illegal Search and Seizure," by John H. Wigmore, American Bar Assn. Journal, August, 1922, and cases cited therein.

Anyone who is familiar with a person's handwriting from having seen him write only once is competent as a nonexpert to give his opinion as to the genuineness of the writing. (Sec. 429, Wharton, Crim. Evidence; *Tam Shi Yam v. United States,* 224 Fed. 422; *Parker v. Commonwealth,* 141 Ky. 509, 133 S. W. 209; *State v. Mahoney,* 24 Mont. 281, 61 Pac. 647; *State v. McDaniel,* 39 Or. 161, 65 Pac. 520; *Clowers v. State,* 17 Okl. Cr. 155, 184 Pac. 790.)

It is not error to admit in evidence other similar transactions of defendant's co-conspirators. (16 C. J. 665, sec. 1327, note 4; *Howle v. State,* 15 Ala. App. 185, 72 So. 759; *State v. Flood,* 148 Iowa, 146, 127 N. W. 48; *Boyle v. United States,* 257 Fed. 803; *Hays v. State,* 90 Tex. Cr. 192,

236 S. W. 482; *People v. Schmidt*, 33 Cal. App. 426, 165 Pac. 555.)

An officer has the right at the time of making an arrest to search the person of the party or the place where the party is found for articles used in connection with or which may be used as evidence to prove the commission of the offense. (*Smith v. Jerome*, 93 N. Y. Supp. 202; *State v. Brown*, 83 Wash. 100; 145 Pac. 69; Bishop's New Crim. Procedure, sec. 211; *People v. Jakira*, 118 Misc. 303, 193 N. Y. Supp. 306, 309, 313, 314; *People v. Manko*, 189 N. Y. Supp. 357; *United States v. Wilson*, 163 Fed. 338, 343; *Getchell v. Page*, 103 Me. 387, 69 Atl. 624, 18 L. R. A., N. S., 253; *Wiggin v. State* (Wyo.), 206 Pac. 373; *People v. Cona*, 180 Mich. 641, 147 N. W. 525; *State v. District Court*, 59 Mont. 600, 198 Pac. 362; *State v. Mausert*, 88 N. J. L. 286, 95 Atl. 991; note, L. R. A. 1916C, 1014–1017; *State v. Hassan*, 149 Iowa, 518, 128 N. W. 960; *May v. United States*, 199 Fed. 53, 117 C. C. A. 431, 57 L. ed. 1353; *State v. Ware*, 79 Or. 367, 155 Pac. 364; *State v. Laundy*, 103 Or. 443, 204 Pac. 958, 975, 206 Pac. 290; *United States v. Snyder*, 278 Fed. 650.)

BUDGE, J.—Appellants were convicted of the crime of conspiracy to ask and receive bribes. This appeal is from the judgment.

From the record it appears that the appellants are dentists, licensed to practice in this state; that from June, 1918, until March, 1919, appellant Myers was secretary of the board of dental examiners; and that appellant Fitzgerald was district manager for a foreign dental organization.

Appellants make nine assignments of error, upon which they rely for a reversal of the judgment in this case, as follows:

1. The court erred in denying defendants' petitions for the return to Dr. Myers of state's exhibit 4.

2. The court erred in the admission in evidence of state's exhibit 4.

3. The court erred in admitting the testimony of witness White.

4. The court erred in the admission of state's exhibit 10.

5. The court erred in denying defendants' motion to strike the testimony of Adams.

6. The court erred in denying defendants' motions to strike from the record and to instruct the jury to disregard all the testimony of Adams.

7. The court erred in denying the motion of defendants for an instruction advising the jury to acquit.

8. The evidence is insufficient to sustain the verdict.

9. The information fails to state a public offense.

Under the first three assignments of error, which will be considered together, counsel for appellant contend that it is error to refuse to return to a defendant property lawfully in his possession taken from him by unlawful search and seizure, and it is error to admit evidence upon the trial as to property so taken when timely application is made for its return.

Prior to the trial, a hearing was had before the trial judge upon applications by appellants for the return of certain papers alleged to have been surreptitiously removed from appellant Myers' residence. At this hearing, evidence was adduced tending to show that Myers was arrested on September 4, 1919, and released on bond; that he was rearrested on the morning of September 5, 1919, at his bondsmen's request; that both arrests were made at Myers' residence, by the sheriff in company with one White, a member of the state constabulary; that upon the occasion of the second arrest the sheriff committed Myers to the custody of White, with instructions to bring him to the sheriff's office when he had made ready to go; that shortly afterwards White and Myers left the residence of the latter and came to Boise, going first to the office of a justice of the peace, where Myers attempted to secure new bondsmen, and later to the jail. Subsequently White turned over to the commissioner of law enforcement certain papers taken from the Myers' residence, including one which subsequently became state's exhibit 4.

There is some conflict in the evidence as to whether White obtained these papers by stealth, when in the Myers' residence, upon the occasion of the first arrest, or at the time of the second arrest and while he was waiting for Myers to make his preparations for departure, or whether he returned to the premises, in company with another person, during the afternoon of September 5, 1919, while Myers was in jail, and seized the papers in question after breaking and entering the house.

If it be conceded that the papers in question were unlawfully seized, without resort to a search-warrant, and without the consent, against the will and in clear violation of the constitutional rights of appellant Myers, this is not ground for reversing the judgment.

Sections 13 and 17 of art. 1 of the constitution of Idaho provide that:

(Sec. 13) ". . . . No person shall be . . . . compelled in any criminal case to be a witness against himself, . . . . "

(Sec. 17) "The right of the people to be secure in their persons, houses and effects against unreasonable search and seizure shall not be violated, and no warrant shall issue without probable cause shown by affidavit, particularly describing the place to be searched and the person or thing to be seized."

Similar provisions are contained in the fourth and fifth amendments to the constitution of the United States, but it is well settled that these amendments apply to the federal government and its agencies, rather than to the states. (6 R. C. L., Constitutional Law, sec. 233, p. 247, note 3.)

The question is therefore presented, whether under the constitution and laws of this state, papers or other subjects of evidence, which have been illegally taken from the possession of the party against whom they are offered, are admissible in evidence after timely demand has been made upon, and denied by, the trial court for the return thereof.

In *State v. Bond*, 12 Ida. 424, 86 Pac. 43, this court observed:

". . . . It does not occur to us that it is a matter of great importance how the letter found its way into the hands of the prosecution. The important questions are: Did appellant write the letter, and if so, do the contents show a motive on his part for the commission of the homicide?

"In 3 Wigmore on Evidence, section 2264, page 3126, the author says: 'If there was ever any rule well settled . . . . it was this: that an illegality in the mode of obtaining evidence cannot exclude it, but must be redressed or punished or resisted by appropriate proceedings otherwise taken.' For a further discussion of this question, see section 2183, same author and volume."

And in *State v. Anderson*, 31 Ida. 514, 174 Pac. 124, timely application having been made for the return of certain liquor illegally seized—although this fact does not appear in the opinion—it was said:

"Evidence otherwise competent and relevant to the issue is not rendered inadmissible by reason of its having been disclosed by an unlawful search or obtained by unlawful seizure. In 1 Greenleaf on Evidence, 15th ed., section 254 (a) it is said: 'It may be mentioned in this place that though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained there is no valid objection to their admissibility if they are pertinent to the issue. The court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question.'

"The text quoted above is supported by the cases of *Legatt v. Tollervey*, 14 East, 302, 104 Eng. Reprint, 617; *Jordan v. Lewis*, 14 East, 306, 104 Eng. Reprint, 618; *Commonwealth v. Dana*, 2 Met. (Mass.) 329."

Appellants rely upon the case of *Weeks v. United States*, 232 U. S. 383, Ann. Cas. 1915C, 1177, 34 Sup. Ct. 341, 58 L. ed. 652, L. R. A. 1915B, 834, and contend that the case of *State v. Anderson, supra,* is distinguishable from the case at bar for the reason that in that case the property taken was property unlawfully in the possession of the defendant,

as to the seizure of which he could not complain. (*United States v. Welsh* (D. C.), 247 Fed. 240; *State v. Krinski,* 78 Vt. 162, 62 Atl. 37; *State v. Suitor,* 78 Vt. 391, 63 Atl. 182.) It is a general rule that property, the possession of which is illegal, cannot be returned to a defendant from whom it was unlawfully taken, and that he cannot prevent its introduction in evidence, but with respect to the right of a defendant to recover property lawfully in his possession and legally taken from him, and to prevent the introduction thereof in evidence, the authorities are sharply divided.

The federal courts and the courts of several states (*Weeks v. United States, supra; State v. District Court,* 59 Mont. 600, 198 Pac. 362, at 365), support the contention made by appellants, while the contrary view has received the approval of the courts of a majority of the states. (*State v. Anderson, supra.*)

We think the correct rule, supported by the weight of authority, is announced by the supreme court of California, in the case of *People v. Mayen,* 188 Cal. 237, 205 Pac. 435, where the court said:

"The Constitution and the laws of the land are not solicitous to aid persons charged with crime in their efforts to conceal or sequester evidence of their iniquity. From the necessities of the case the law countenances many devious methods of procuring evidence in criminal cases. The whole system of espionage rests largely upon deceiving and trapping the wrongdoer into some involuntary disclosure of his crime. It dissimulates a way into his confidence; it listens at the keyhole and peers through the transom-light. It is not nice, but it is necessary in ferreting out the crimes against society which are always done in darkness and concealment.

"Thus it is that almost from time immemorial courts engaged in the trial of a criminal prosecution have accepted competent and relevant evidence without question, and have refused to collaterally investigate the source or manner of its procurement, leaving the parties aggrieved to whatever direct remedies the law provides to punish the trespasser, or recover the possession of goods wrongfully taken. The

federal authorities relied upon by appellant do not question the general acceptance of this doctrine by the courts, and only differentiate it, in the cases cited, on the ground that persons from whom personal effects are unlawfully taken are entitled to demand and recover possession of their property by application on motion, and that, when they have made such timely demand to the tribunal controlling the custody of such property, there should not be an arbitrary refusal to grant the demand in order to hold the ill-gotten articles as evidence, and the admission of such property thereafter as evidence is held error.

"The right of one whose goods have been unlawfully seized to recover their possession, and that irrespective of its effect in depriving the state of their use in evidence, is not disputed; but the contention, which we think is maintained by the great weight of authority, is that the proceeding for such recovery is independent of the criminal proceeding in which it is sought to use such articles in evidence. Even conceding the right to demand such recovery by motion before the court in which such criminal action is pending, as is apparently the rule in the federal courts and as recognized in some of the state decisions (*People v. Kinney* (Sup.), 185 N. Y. Supp. 645; *State v. Peterson,* 27 Wyo. 185, 194 Pac 342, 13 A. L. R. 1284), upon what theory can it be held that such proceeding is an incident of the trial, in such a sense that the ruling thereon goes up on appeal as part of the record and subject to review by the appellate court? It seems to us rather an independent proceeding to enforce a civil right in no way involved in the criminal case. The right of the defendant is not to exclude the incriminating documents from evidence, but to recover the possession of articles which were wrongfully taken from him. That right exists entirely apart from any proposed use of the property by the state or its agents.

"Its determination involves the framing of separate issues of fact as to the rights of possession of the goods and the method of the seizure, by whom taken, and whether or not the trespass was committed by an agent of the state. The

court having tried such issue, and, as in the case before us, denied the relief demanded, we question if under any procedure recognized in the state of California such ruling can be collaterally attacked. . . . . Only matters incident to the cause of action on trial are subject to review on appeal therefrom, and for this reason it is held that an objection on the trial to the admission of evidence on the ground that it has been wrongfully seized does not lie, and cannot be reviewed on appeal, but that any rights so involved must be raised in an independent proceeding. . . . .

"It is our conclusion that any rights determined under such independent proceeding cannot be reviewed under our procedure on the record of appeal from the action in which such evidence was used."

See, also, *Banks v. State* (Ala.), 93 So. 293; *State v. Turner,* 82 Kan. 787, 136 Am. St. 129, and note, pp. 135–163, 109 Pac. 654; note to *State v. Edwards,* 59 L. R. A. 465; note to *Weeks v. United States,* L. R. A. 1915B, 834; note to *Blackburg v. Beam,* L. R. A. 1916E, 715, 7 2d Dec. Dig., secs. 393 (2), 394, 395, Criminal Law; Am. Dig., vol. 11A, 1920, 1921, sec. 395, Criminal Law; *People v. Le Doux,* 155 Cal. 535, 102 Pac. 517; *State v. Laundy,* 103 Or. 443, 204 Pac. 958, at 975; *Gindrat v. People,* 138 Ill. 103, 27 N. E. 1085; *Siebert v. People,* 143 Ill. 583, 32 N. E. 431; *Trask v. People,* 151 Ill. 523, 38 N. E. 248; Wigmore, Using Evidence Obtained by Illegal Search and Seizure, American Bar Assn. Journal, August, 1922.

An application for the return of papers unlawfully seized creates a collateral issue, whether made prior to or at the time of the trial of the person against whom such papers are sought to be introduced in evidence. A proceeding for the recovery of papers wrongfully taken is of a civil nature, and under our procedure is no part of a criminal action. Evidence, if competent and relevant, is admissible irrespective of the manner in which it was obtained. If a defendant is entitled to the possession of papers which have been illegally seized and are about to be used in evidence against him, he has his remedy in an independent proceeding.

The conclusion necessarily follows that if the applications made by appellants for the return of the papers taken from the Myers' residence are to be considered at all, they must be regarded as relating to an independent proceeding, and the action of the court thereon cannot be reviewed on appeal in a criminal action. The motion to strike that portion of the transcript which contains the proceedings had upon said applications should be sustained, and error cannot be predicated upon the action of the court in admitting in evidence state's exhibit No. 4, and in permitting witness White to testify in relation thereto.

Moreover, if the arrest was lawful, and if the papers in question were taken at the time of the arrest of appellant Myers, as testified to by White—and there is no direct testimony to the contrary—and were instrumentalities through which the crime charged against appellants were in part consummated, the seizure was not violative of the provisions of our constitution, the search being justifiable as an incident to the lawful arrest. (*State v. Laundy, supra;* 5 C. J. 434.) It was held in *People v. Jakira,* 118 Misc. 303, 193 N. Y. Supp. 306, that: "Property found in the possession of defendant at the time of his lawful arrest, and relevant and material to the prosecution, may be retained by the prosecution, and used against defendant on his trial, even though there were neither warrant of arrest nor warrant of search and seizure at the time the papers were taken."

See, also, *Smith v. Jerome,* 47 Misc. 22, 93 N. Y. Supp. 202; *People v. Manko,* 189 N. Y. Supp. 357; *State v. Mausert,* 88 N. J. L. 286, 95 Atl. 991; L. R. A. 1916C, 1014; *State v. Brown,* 83 Wash. 100, 145 Pac. 69; Bishop's New Crim. Proc., sec. 211; *United States v. Snyder,* 278 Fed. 650; *State v. Wallace,* 162 N. C. 622, Ann. Cas. 1915B, 423, 78 S. E. 1.

In *United States v. Snyder, supra,* the court said:

"The Fourth Amendment to the Constitution contains no prohibition against arrest, search, or seizure without a warrant. That was left under the rules of common law. The amendment provides not that no arrest, search or seizure

should be made without a warrant, but prescribes that there shall be no *unreasonable* search and seizure; in other words, that the people shall be secure in their persons, houses, papers and effects against unreasonable searches and seizures; not against all searches and seizures, but simply against *unreasonable* searches and seizures.

"And this brings us to the question: In what cases may arrests, searches and seizures be made without a warrant, under the principles of the common law and statutory law prevailing in this country? .... It can be said to be the common law of the states, or the common law of the great majority of the states, in the Union, that a peace officer, a prohibition officer, has the right to arrest a criminal offender caught in the act of committing the crime; and when he arrests him, if he captures him with counterfeit coin, if he catches him with smuggled goods, if he catches him with stolen articles; if he catches him with liquor under the Prohibition Law, he has the right not only to arrest him without a warrant, but to search him and to retain the wet goods as evidence against him .... To hold that no criminal can in any case be arrested and searched for the evidence and tokens of his crime without a warrant, would be to leave society, to a large extent, at the mercy of the shrewdest, the most expert, and the most depraved of criminals, facilitating their escape in many instances."

Appellants' fourth assignment of error attacks the action of the court in admitting in evidence state's exhibit No. 10, which is an unsigned letter, written in longhand and addressed to Dr. C. C. Hendricks of Portland, Oregon, under date of June 6, 1919. The state sought to establish that this letter was in the handwriting of appellant Myers, by calling Dr. Jacobson, who was president of the dental board during the time that Myers acted as secretary. Dr. Jacobson testified that he corresponded with Myers once or twice a month for a period of a year and a half; that he became familiar with Myers' handwriting; that he thought he would know Myers' handwriting when he saw it; that the writing upon

state's exhibit No. 10 looked like the handwriting of Myers, and he should naturally think it was his.

The rule is stated in Underhill on Criminal Evidence, 2d ed., sec. 429, p. 718, that: "Anyone who is familiar with a person's writing from having seen him write, though only once, or never having seen him write, from carrying on a correspondence with him, or from opportunities afforded from frequently handling writings known to have been written by the person, is competent as a nonexpert to give his opinion as to the genuineness of his signature. The weight of the evidence to prove the genuineness of handwriting, whether given by experts or by those who know the party's handwriting, is wholly for the jury. . . . "

See also 3 Jones Commentaries on Evidence, sec. 547, p. 603 et seq.; 11 R. C. L. 620; *State v. Mahoney,* 24 Mont. 281, 61 Pac. 647; *State v. McDaniel,* 39 Or. 161, 65 Pac. 520; *Clowers v. State,* 17 Okl. Cr. 155, 184 Pac. 790.

Appellants cite no authorities in support of their contention, and we think it is manifestly untenable, nor is there any merit in the claim that state's exhibit No. 10 is irrelevant and immaterial.

Assignments Nos. 5 and 6 involve the action of the court in denying appellants' motion to strike the testimony of L. P. Adams, and in refusing to instruct the jury to disregard the same.

Witness Adams testified that he met appellant Myers at the latter's office in Boise, to arrange to take an examination for a license to practice dentistry; that Dr. Myers told him, "You understand there is a compensation," to which the witness replied that he understood $300 would be required and to which Dr. Myers assented; that witness paid that amount to Dr. Myers and received his license without examination; that he did not know appellant Fitzgerald.

Appellants urge that the admission of this testimony was not justified for the reason that no connection is shown between appellant Fitzgerald and Adams; that the transaction was between Dr. Myers and Adams only, and did not tend to prove a conspiracy between the appellants, but was no

doubt admitted upon the theory that it tended to prove the offense charged by showing system, knowledge, intent or the like. It is conceded that it might be admissible upon the trial of an information against Dr. Myers for bribery or for receiving bribes.

We are of the opinion, however, that where a conspiracy relates to a series of crimes rather than to a single crime, evidence that one of the conspirators committed a crime similar to that for which both of the defendants are on trial is admissible.

Great latitude must be given the state in the production of its evidence in proof of a criminal conspiracy. (*Jenkins v. Commonwealth,* 167 Ky. 544, 3 A. L. R. 1522, 180 S. W. 961.)

In *People v. Sharp,* 45 Hun, 460, it was held that: "Where persons are charged with co-operating together to bribe certain aldermen, and the probability of such co-operation is established, evidence of the acts and statements of each contributing to the desired end is admissible against all."

In *Commonwealth v. Smith,* 163 Mass. 411, 40 N. E. 189, it was also held: "On a trial for conspiracy to procure money to be paid to aldermen for their votes for granting licenses, evidence by a witness that, while the conspiracy was in force, he and others were paying money in order to get licenses, and that one of the aldermen had received the money, is material."

See also *Jenkins v. Commonwealth, supra; State v. Flood,* 148 Iowa, 146, 127 N. W. 48; *Howie v. State,* 15 Ala. App. 185, 72 So. 759.

The rule is well settled that the acts and declarations of a co-conspirator, done and made in furtherance of a common design, are admissible against all the other parties to the conspiracy, whether done or made in their presence or with their knowledge or not. (*State v. Byers,* 16 Mont. 565, 41 Pac. 708; *Pincus v. Reynolds,* 19 Mont. 564, 49 Pac. 145; Wigmore on Evidence, 1079; 8 Cyc. 679.)

Under the 7th and 8th assignments of error, appellants contend that the court erred in denying their motion for an instruction advising the jury to acquit, and that the evidence is insufficient to sustain the verdict.

It is urged that the evidence is insufficient to show that the defendants conspired or confederated or agreed to ask or receive bribes from any person, or from any person they could induce to make applications for a license to practice dentistry in this state, or from any person applying for a license to practice dentistry upon the corrupt or any understanding or agreement that the vote, opinion or action of defendant Myers would be favorable to such applicants, and that the evidence fails to show that defendant Fitzgerald was such an executive officer of the state of Idaho as could have received bribes.

No good purpose could be served by setting out in detail all the testimony which to our minds clearly shows that these two defendants were working together for the sole purpose of disposing of dental licenses, in order to enrich themselves, in violation of the statutes of this state.

From the testimony of witness Cruse it is established that appellant Fitzgerald stated to the witness that there was no trouble to purchase dental licenses in Idaho, that they could be purchased like groceries. It also appears that Fitzgerald approached witness Edele, whom he informed that he need not worry about securing a dental license in Idaho, that they were not difficult to obtain, that all he needed was a few hundred dollars, and that he, Fitzgerald, had a whole desk full of them in his office. Fitzgerald admitted that this conversation took place as testified to, and his explanation of it was a matter for the jury. Fitzgerald also told witness Bunch that he could get a license to practice dentistry in Idaho for $250, and attempted to collect that amount from him. It also appears from the testimony that C. C. Hendricks, mentioned in state's exhibit No. 10, gave Fitzgerald a check for $200, which the latter indorsed. It is clear from the evidence that appellants Myers and Fitzgerald conspired together for the purpose of unlawfully

selling licenses to practice dentistry in Idaho, and that Myers sold dental licenses without regard to his official 'duties and in direct violation of the provisions of the statutes of this state, which we think to be fully established not only from the testimony adduced upon the trial but also from state's exhibits Nos. 4 and 10, which read as follows:

State's exhibit No. 4:

"Dear Dr. Myers:

"Arrived Sat. Noon. Busy as . . . . ever since.

"Meant to see you Thurs. night but was too busy.

"Want you to make out licenses for Claude C. Hendricks, Portland, Or., R. M. Carrigan—Portland, Ore., Inclosed, find check for same.

"I think I can line up something here. If so will do so.

"Try to get lined up right on Utah. If you can fix things over there I can see where you can make a lot of jack. Do all you can to get my license through.

"Am returning license of George Frank Wolfe—Either you or I got that balled up.

"The name is George Frederick Wolfe but make out the new license George F. Wolfe.

"Everything is fine and dandy.

"Don't forget Mohney's license or rather his diploma.

                              "Yours for success,

                                        "FITZ."

State's exhibit No. 10:

                         "Boise, Idaho, June 6, 1919.

"Dr. C. C. Hendricks,

     "Portland, Oregon.

"You don't need to answer any of those questions. You are on the register. It's none of their business of the manner and way you were examined. They have no record for anybody in the whole state. I only turned over the register, so I would just send them your $2.00 and direct them to the old board for information. I wrote him a letter telling him what I thought about those letters. They began to operate April 1, 1919, and all they can do is to consider what is on the record. Refer him to the old law for mode of examina-

tion.  They just want something for political purposes.  See Fitzgerald and have him write me.  You may tell him you were examined, but not what way.  Signed by President and Secretary.  Send $2.00 before July 1, 1919.''

The evidence, taken as a whole, was sufficient to justify the jury in reaching the verdict which they did.

There is no merit in appellants' assignment No. 9, under which they contend that the information fails to state a public offense upon the ground that appellant Fitzgerald is not alleged to be such an executive officer of the state of Idaho, or other officer, as could receive bribes.  The rule is well settled that a person who is personally incapable of committing an offense may be guilty of conspiring to commit the offense.  (5 A. L. R., note, 3, p. 787.)

From what has been said it follows that the judgment of the trial court should be affirmed, and it is so ordered.

Rice, C. J., concurs.

McCARTHY, J.—I concur in the affirmance of the judgment.  As to the principal question involved, I agree with that part of the opinion which holds that the search and seizure resulting in the state's obtaining and introducing in evidence state's Exhibit 4 were not unreasonable or unlawful under Const., art. 1, sec. 17, but were reasonable and lawful as incidental to a lawful arrest.  I do not concur in that part of the opinion which approves the doctrine of *People v. Mayen,* 188 Cal. 237, 205 Pac. 435, and disapproves the doctrine of *Weeks v. United States,* 232 U. S. 382, Ann. Cas. 1915C, 1177, 34 Sup. Ct. 341, 58 L. ed. 652, L. R. A. 1915B, 834.

Justices Dunn and Lee authorize me to state that they join in this concurring opinion.

Petition for rehearing denied.