STATE OF IOWA, Appellee, v. CARRIE E. ROWLEY, Appellant.

CRIMINAL LAW: Evidence—Evidence Wrongfully Obtained. Evidence which is pertinent and relevant is admissible against the defendant in a prosecution for crime, even though the same was secured *by an unlawful search of defendant's premises.*

PRESTON, J., dissents.

CRIMINAL LAW: Evidence—Admissions. On the trial of a charge of abortion, admissions by the accused that she was in the business of producing abortions are admissible.

CRIMINAL LAW: Evidence—Other Offenses—Abortions. Evidence of other nonremote abortions committed by the accused on women other than the one specified in the indictment, is admissible on the issue of intent.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

NOVEMBER 22, 1923.

REHEARING DENIED APRIL 4, 1924.

INDICTMENT for an attempt to procure the miscarriage of a woman. The defendant was convicted, and appeals.—*Affirmed.*

*Herman F. Zeuch, Theodore F. Mantz,* and *Ladd, Warren & Ladd,* for appellant.

*Ben J. Gibson,* Attorney-general, and *John Fletcher,* Assistant Attorney-general, for appellee.

FAVILLE, J.—An opinion in this case, filed March 7, 1922, appears in 187 N. W. 7. A rehearing has been granted, and said opinion is withdrawn.

The appellant is not a licensed physician or surgeon, but has been employed as a nurse. The indictment in this case is brought under Section 4759 of the Supplemental Supplement to the Code, 1915, which is as follows:

"If any person, with intent to produce the miscarriage of any woman, willfully administer to her any drug or substance whatever, or, with such intent, use any instrument or other means whatever, unless such miscarriage shall be necessary to save her life, he shall be imprisoned in the penitentiary for a term not exceeding five years, and be fined in a sum not exceeding one thousand dollars."

The evidence in behalf of the State tended to show that appellant performed an illegal operation upon a certain woman by the use of an instrument, and that the same was done with the intent to produce a miscarriage, and that such miscarriage was not necessary to save the life of the woman upon whom the operation was performed. All of the essential ingredients of the crime were supported by proof in behalf of the State.

I. The evidence shows that the sheriff had in his possession a warrant for the arrest of the appellant, and went with the same to the house of the appellant, and there arrested her.

1. CRIMINAL LAW: evidence: evidence wrongfully obtained.

He had no search warrant. It was his contention that he informed the appellant that he was going to search the premises where the arrest was made, and where appellant lived, and that at that time appellant said to the sheriff, "Go to it, you won't find anything here," and objected to the search, and said she wished he would not do it. He, however, proceeded to make a search of the premises, and in so doing found certain instruments which were identified and offered in evidence, the same consisting of catheters, forceps, a sound or probe, a speculum, and other instruments. The appellant objected to the introduction of these instruments in evidence, it being affirmatively established that the officer, although clothed with a warrant for the arrest of the appellant, had no search warrant at the time, and that the instruments were not found upon the person of the appellant.

The case squarely presents the proposition as to whether or not evidence which is obtained by an officer by illegal or unauthorized search, although material and germane to the question in issue, can be received in evidence against one charged with crime, without violation of constitutional rights.

Since the original opinion in this case was written, we have had before us for consideration the case of *State v. Tonn,* 195 Iowa 94, wherein a majority of the court reached a conclusion upon this question contrary to the views expressed in the opinion filed in this case. In the *Tonn* case we held that evidence obtained by an unlawful search was admissible in evidence upon the trial of one charged with crime, where the same was competent and material, and that a court would not try the collateral issue in the case with regard to the illegality of the search, or determine the question therein raised by a petition for a restoration of the property to the defendant.

The views of the court are fully set out in the majority and dissenting opinions filed in the *Tonn* case, and it is unnecessary that we repeat what was therein said. The majority of the court now adhere to the views expressed in the majority opinion in the *Tonn* case, and it is controlling on the question in the instant case. Since the *Tonn* case was decided, a number of cases have been decided in other courts, sustaining the same position taken by the majority in the *Tonn* case. Some of said cases so holding are as follows: *State v. Ryan,* (Minn.) 194 N. W. 396; *Rosanski v. State,* 106 Ohio 442 (140 N. E. 370); *People v. Vulge,* (Mich.) 194 N. W. 582; *Jones v. State,* (Ala. App.) 96 So. 721; *Lott v. State,* (Tex.) 251 S. W. 1070; *State v. Prescott,* (S. C.) 117 S. E. 637; *State v. Green,* (S. C.) 114 S. E. 317; *Georgis v. State,* (Neb.) 193 N. W. 713; *Billings v. State,* (Neb.) 191 N. W. 721; *Clements v. State,* (Ala.) 95 So. 831; *Bell v. State,* (Tex.) 250 S. W. 177; *State v. Chuchola,* (Del.) 120 Atl. 212; *Gurski v. State,* 93 Tex. Cr. Rep. 612 (248 S. W. 353); *Argetakis v. State,* (Ariz.) 212 Pac. 372; *Commonwealth v. Wilkins,* (Mass.) 138 N. E. 11; *State v. Fleckinger,* (La.) 93 So. 115; *State v. Kanellos,* (S. C.) 115 S. E. 636; *Smuk v. People,* 72 Colo. 97 (209 Pac. 636); *People v. Wren,* (Cal. App.) 210 Pac. 60; *State v. Myers,* 36 Ida. 396 (211 Pac. 440); *Griggs v. State,* 18 Ala. App. 467 (93 So. 499); *Venable v. State,* (Ark.)

246 S. W. 860; *State v. Clary*, (La.) 94 So. 385; *State v. Creel*, (La.) 94 So. 433; *State v. Hesse*, (Minn.) 191 N. W. 267.

II.   The appellant alleges that the court erred in admitting in evidence the declaration of the appellant to the effect that she was engaged in the business of producing abortions. This declaration was in the nature of an admission.

2. CRIMINAL LAW: evidence: admissions.

The question of intent was involved in the case, under the statute, and the court did not err in admitting this evidence.

· III.   Over the objection of appellant, the court admitted in evidence testimony tending to show that appellant had committed abortions upon other women than the one named in the indictment.

3. CRIMINAL LAW: evidence: other offenses: abortions.

Unquestionably, the general rule is that, upon the trial of a criminal case, evidence of the commission of other similar crimes by the defendant is inadmissible. The rule has been declared so frequently that citation of authorities is unnecessary to support it. There are, however, exceptions to this rule, and particularly so where a question of intent is involved. The statute under which appellant was indicted provides that the act must be done "with intent" to produce the miscarriage of any woman. It also provides that the act is not criminal in the event that such miscarriage shall be necessary to save the life of the person upon whom the operation is performed.

In this case, the appellant denied that she performed any operation whatever, and it is, therefore, urged that evidence of other similar crimes for the purpose of showing intent was inadmissible. The State, however, was compelled to establish, as part of its main case, not only the fact of the use of the instruments, but that they were used with the specific intent charged, and that it was not necessary so to do in order to save life. Notwithstanding the appellant's denial in evidence of having in any manner performed the act charged, the burden rested upon the State, not only to prove that the appellant used an instrument as charged, but that it was done with the intent to procure a miscarriage, and that such intent was an unlawful one, because of the fact that the operation was unnecessary, to save life. The fact that appellant may have performed other similar acts

closely connected in time with the act in question, and that such acts were performed with the intent to produce miscarriage, and that the same were not necessary to save life, would have a legitimate bearing upon the question of the intent of appellant in the instant case, if the jury believed the evidence of the State to the effect that the act was, in fact, performed.

~ The precise question before us was considered by the Supreme Court of Illinois in *Clark v. People,* 224 Ill. 554, wherein it is said:

"Complaint is also made of the admission of the testimony of five or six women that at different times, during several years preceding the date of this alleged offense, plaintiff in error, Ida Clark, solicited patronage, and held herself out as being able and willing to commit abortion or produce miscarriage by means of instruments and medicines. On a trial for an offense such as charged in this indictment, intent is an essential ingredient, and it is competent to show the declarations of one on trial for procuring an abortion, to the effect that she was in the habit of performing or had solicited such work. Wharton on Criminal Evidence (8th Ed.), Sec. 46, and cases cited; *Commonwealth v. Blair,* 126 Mass. 40; *People v. Sessions,* 58 Mich. 594; *People v. Abbott,* 116 Mich. 263."

The same question came before that court again in *People v. Hobbs,* 297 Ill. 399, wherein the court said:

"In its case in chief, the State must prove all of the elements of the crime, including the intent, and need not wait to learn the character of the defense that is to be made by the defendant. The plea of not guilty puts in issue all material allegations, and any proper defense may be shown thereunder. * * * The proof of former criminal abortions is admitted upon the theory that they create a reasonable presumption of a practice and a business of performing such criminal acts, and particularly where it is shown that such former acts were performed solely for a money consideration on the part of the defendant; and the more numerous the acts so proved, the stronger, ordinarily, will be the presumption."

See, also, *People v. Schultz-Knighten,* 277 Ill. 238; *State v. McCurtain,* 52 Utah 63 (172 Pac. 481); *People v. Seaman,* 107 Mich. 348; *State v. Brown,* 3 Boyce (Del.) 499 (85 Atl. 797);

*State v. Newell*, 134 Minn. 384 (159 N. W. 829); *Rosenweig v. People*, 63 Barb. (N. Y.) 634.

The court properly instructed the jury that this evidence could be considered only on the question of intent. There was no error at this point.

IV. The appellant complains of misconduct on the part of the county attorney in the opening statement to the jury and in the closing argument.

It must be conceded that the prosecutor approached very close to the danger line in the statements to the jury, but we do not think there was such prejudicial misconduct as requires interference on our part or a reversal of the case.

The judgment appealed from must be, and it is,—*Affirmed.*

EVANS, STEVENS, ARTHUR, and DE GRAFF, JJ., concur.

PRESTON, C. J. (dissenting).—I dissent on the constitutional question. I concede that the *Tonn* case, if adhered to, is controlling in this case. I wish to point out, however, that, as I view it, the vital point in the *Tonn* case was barely mentioned, was not discussed, and, as I think, was not decided. It has never been decided, or even raised, in this state, prior to the *Tonn* case. There was a long discussion, and many cases are cited in the *Tonn* case and in the dissents, on the question as to whether or not, as a general proposition, evidence obtained in an unlawful search and seizure, and where both the national and state Constitutions have been violated, is admissible. The vital point, as to whether it is error to overrule an application to return the property so unlawfully seized, or whether, where such application is overruled, the evidence is admissible, was given scant consideration. The only reference to this vital proposition is in a few words. I expressed my views in the *Tonn* case, as did the late Mr. Justice Weaver. I do not wish to repeat what was there said, but there are a few other observations I desire to make at this time.

In the instant case, a timely application was made to return the property unlawfully seized. This was overruled. The question is whether, under such circumstances,—and not the circumstances of the cases discussed in the majority opinion in the *Tonn* case,—the evidence was admissible. It was conceded in

the *Tonn* case that there was an unlawful seizure, and that the Constitution was violated. It must be conceded in the instant case, not only that the Constitution is violated, but that the proceedings were high-handed. I do not wish to add my approval to such proceedings by holding the evidence admissible, when practically all the cases on the subject hold that it is not admissible, and that it is error to overrule the application. In the *Tonn* case, however, a lengthy discussion and citation of many cases were had, and it was held that evidence was admissible where there is an unlawful seizure; but the question I am now considering was disposed of in short order, by saying that, because the evidence was admissible anyway, the application to return the property and the effect of it were not material.

There are some other facts shown by the record which are not mentioned in the majority opinion in this case. The sheriff had a warrant for the arrest of the defendant, and under the warrant he would have authority to enter the premises for the purpose of making the arrest. Code Section 5201. He had no right to search the premises and seize property under such a warrant. He had no search warrant. After the sheriff had arrested the defendant and she had been taken to jail by a sheriff's deputy, the sheriff searched her premises, which were her private residence, and seized, not only the instruments offered in evidence, but other property, including her private papers, after ransacking the house and her private papers, some of which were taken with him, but not used in evidence in this case. After defendant had been taken to jail, one of her sons, at the demand of the sheriff, furnished certain keys, which the sheriff used in searching different parts of the house. Defendant's husband testified that he is the head of the family, and that he did not consent to such search and seizure. The defendant also so testified. The testimony of the defendant and that of the sheriff, taken as a whole, show that, though perhaps defendant did not know her constitutional rights, she objected and protested against the sheriff's making a search, before she was taken to jail; and, as said, she was not present at all when the search was made and the seizure made of the instruments and papers. This being so, there was no consent or waiver. The sheriff did not, at first, explain to the defendant the purpose

for which he desired admittance to the house, which explanation the statute seems to require. He went to the house with a woman deputy sheriff, and the defendant was first informed that the sheriff was "the young man in the case." This statement was first stricken from the record, but went in later. He afterwards informed defendant who he was, and the purpose of his visit. The sheriff at first testified:

"Q. Before Mrs. Rowley left the house, and after you had informed her as to who you were and what you were out there for, did you say anything to her with reference to searching the house? A. I can't remember the exact conversation. I spoke to her about searching the place. Q. What did she say when you mentioned that subject, if anything? A. I can't remember the words she said. She said I wouldn't find anything. When I started to look through the library table, she said it wasn't necessary for me to look around through those letters. I told her I always did that, whenever I was out making an arrest and things were there that were liable to lead to some of the facts. She objected, and said she wished I wouldn't do so."

Later in his examination, and on cross-examination, he attempts to strengthen his testimony by saying:

"If I remember the exact words, she said, 'Go to it; you won't find anything here.' "

His evidence, taken as a whole, shows that he had no recollection of what was said. The record is that she objected and protested, as did other members of her family, to the sheriff's making the search and seizure. As said, the defendant at the proper time made an application to the court to return the property so unlawfully seized. The evidence was properly objected to, and the question was raised by motion for directed verdict and by motion for new trial, and perhaps in other ways. We have held that, under some circumstances, and for certain purposes, the sheriff, upon making an arrest, may search the person of a defendant. This is where money or property may be taken from him which is connected with the crime charged, or which may serve to identify the prisoner, or which may be used by him in effecting an escape. But that is not this case.

The provision in the state and Federal Constitutions is this:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable seizures and searches, shall not be violated," etc.

There is much more involved than the result of this or any other particular case. The only reason given in any of the cases, or the underlying principle, as the books say, for holding the evidence admissible where there has been an unlawful search and seizure, in the absence of an application to return the property, is that the courts will not stop the main trial to investigate a collateral matter. But no one ever heard of a court's refusing to stop to investigate the question as to whether a confession was obtained by third-degree methods. There is no difference between such a case and the question now being considered. There is a suggestion in the *Tonn* case that to hold the evidence inadmissible would hamper the prosecution of criminals. I yield nothing to my brothers on the question of law enforcement. It occurs to me that, if the Constitution is in the way, it should not be brushed aside, but amended, and in the manner therein provided. In this connection it should be remembered that the very purpose of the fourth and fifth amendments to the Federal Constitution, and other amendments thereto, was to prevent thumbscrew and third-degree methods, including unlawful searches and seizures. To my mind, to admit the evidence under the circumstances here shown is to make of the Constitution a mere scrap of paper, or, to put it in the words of the Supreme Court of the United States, "a mere form of words." See cases in the dissents in the *Tonn* case. The rule, which I want to state again, supported by numerous cases, is stated in 10 Ruling Case Law 933 thus:

"It is obvious, and the courts have frequently declared that, if letters and private documents may be seized in violation of the constitutional safeguard, and held and used in evidence against a citizen accused of crime, then the constitutional provision is ineffectual and of no value. From this it may correctly be inferred * * * that there is a method by which the use of such evidence may be prevented. The principle underlying the decisions admitting the evidence is that an objection to an offer of proof made on the trial of a cause raises no other question than that of the competency, relevancy, and materiality of the

evidence offered, and that consequently the court, on such an objection, cannot enter on the trial of a collateral issue as to the source from which the evidence was obtained. But since there is a right, there must of necessity be a remedy, and the remedy is to be found in the making of a timely application to the court for an order directing the return to the applicant of the papers unlawfully seized. On such an application, the question of the illegality of the seizure may be fully heard, and if the court erroneously refuses to order a return of the papers, and thereafter receives them in evidence against the applicant, over his objection, it is an error for which a judgment of conviction must be reversed.''

This is the rule adopted by the Supreme Court of the United States in *Weeks v. United States,* 232 U. S. 383, and other cases. So far as I know, there are no cases to the contrary. The majority opinion does not call attention to any such cases. This court overrules the interpretation by the Supreme Court of the United States, of the Federal Constitution. The rule just stated is the way out of the difficulty which some of the courts have found in rejecting such evidence, and permits the courts to support the Constitution, rather than make of it a mere form of words. The proposition is practically ignored in the *Tonn* case, and entirely so in the instant case. To hold the evidence admissible where the application is made, is an entirely different proposition from holding that it is admissible where the application is not made. The two propositions are as wide apart as the poles. I am at a loss to understand how the majority get around the rule before stated. There is no attempt to do so. The rule is reasonable and right. In the one case, the Constitution is upheld and supported; in the other, the violation of the Constitution by the sheriff is approved.

There is another reason, as I think, why the instruments were erroneously admitted in evidence. I shall only mention it, without discussing it. The jury may have surmised that the instruments were or could be used for the purpose of producing an abortion. It may be so, but there is no evidence in the record to show that fact. The evidence is that the instruments are used

for proper purposes, and there is evidence that members of defendant's family so used them.

I would reverse.