No. 2592

## STATE *v.* CHIN GIM

April 4, 1924.                                    224 Pac. 798.

1. CRIMINAL LAW—COMPETENT EVIDENCE ADMISSIBLE IRRESPECTIVE OF METHOD OF OBTAINING.

In prosecution for possession of drugs without order or prescription of a physician, etc., therefore, in violation of Stats. 1920–1921, c. 36, drugs within the purview of the statute, dug up in a chicken yard used by defendant, *held* admissible, irrespective of whether they were obtained by a method unauthorized by law as being inhibited by Const. U. S. Amend. 4, or Const. Nev. art. 1, sec. 18, forbidding unreasonable searches and seizures.

2. COURTS—STATE COURT NOT CONTROLLED BY UNITED STATES SUPREME COURT DECISIONS ON QUESTIONS INVOLVING FOURTH AND FIFTH AMENDMENTS.

Since Const. U. S. Amends. 4 and 5 operate on the national government alone, in considering the effect to be given Const. Nev. art. 1, secs. 8 and 18, which are like the former, the state courts are not controlled by decisions of the United States Supreme Court.

3. POISONS—CONVICTION OF POSSESSING PROHIBITED DRUGS SUSTAINED.

In prosecution for possessing prohibited drugs, evidence of drugs found on defendant's premises *held* sufficient to convict.

4. POISONS—LACK OF KNOWLEDGE OF POSSESSION OF PROHIBITED DRUGS MATTER OF DEFENSE.

Where prohibited drugs were found in a chicken yard used by defendant, it was not incumbent on state to prove defendant placed them there; the statute making possession unlawful, and defendant's lack of knowledge of such possession being matter of defense.

APPEAL from Fourth Judicial District Court, Elko County; *Wm. E. Orr,* Judge.

Chin Gim was convicted of possessing cocaine and opium without written order or prescription therefor, and he appeals. **Affirmed.**

*E. P. Carville,* for Appellant:

The searching officer must have a search-warrant unless the person is caught in the criminal act. United States Constitution, art. 6; Nevada Constitution, art. 1, sec. 18.

No search-warrant shall be issued except upon probable cause. Rev. Laws, 7415–7434.

The demand for the return of the confiscated property and the objection to its use in evidence, being made before the beginning of the trial, were timely. 10 R. C. L. 933, 934; Weeks v. United States, 232 U. S. 383; People v. Marxhousen, 2 A. L. R. 1505; State v. Peterson, 13 A. L. R. 1284; Youman v. Commonwealth, 13 A. L. R. 1303.

The search-warrant was illegal because it was issued upon an illegal affidavit, made on information and belief; the officer did not make his return as required by law. While there is conflict between the United States and some state decisions as to whether property taken on an illegal warrant can be used in evidence, there is no question that its use would be illegal under the federal rule, upon timely application, and the property should be returned or destroyed and the evidence suppressed. Boyd v. U. S. and Weeks v. U. S., supra; Silverthorne Lumber Co. v. United States, 251, 385; Amos v. United States, 255 U. S. 313; Gouled v. United States, 255 U. S. 298. Florida, Indiana, Iowa, Kentucky, Michigan, Mississippi, Oregon, South Carolina, Tennessee, Washington, and Wyoming courts have taken the view that such evidence is not legal. The constitutions of the United States and the state are the basis of government, and the people are entitled to the protection thereby assured. A person should be secure from invasion of his home by unbridled legislation, executive or administrative will. There is provision for lawful search and seizure; none other is constitutional. Marxhousen Case, supra.

The United States Supreme Court has made it plain that all alike are to be secured by the protection given by the constitution. State v. Laundy (Or.), 204 Pac. 958; State v. Gibbons (Wash.), 203 Pac. 390; 2 R. C. L. 446, 448; 5 C. J. 395.

No person shall be compelled in any criminal case to give evidence against himself. McKnight v. United States, 115 Fed. 972; State v. Jackson (Wash.), 145 Pac. 470.

An offense is committed in the presence of an officer when he sees it, or sees one or more of a series of acts constituting the offense, and is aided by his other senses or by information as to others. State v. Lutz, 101 S. E. 434; 2 R. C. L. 467; 3 Cyc. 880; State v. Gibbons, supra.

There is no proof that the defendant knew that any narcotics were on the premises. Such knowledge is a necessary part of the offense, and the verdict of guilty should be reversed. 2 R. C. L. sec. 167; State v. Ah Tom, 8 Nev. 213.

The information alleged, though the state failed to prove, that defendant had no written order or prescription for the narcotics. It was as necessary to prove as to charge that fact. Stats. 1921, p. 67.

The great constitutional guaranties should be given a broad, not a narrow, construction. If error is to be made, it had better be made on the side of liberty. State v. Wills (W. Va.), 24 A. L. R. 1398.

*H. U. Castle; W. T. Mathews,* District Attorney; *M. A. Diskin,* Attorney-General, and *Thos. E. Powell,* Deputy Attorney-General, for Respondent:

A majority of the state courts refuse to follow the decisions of the federal courts, and, even if this court should follow them, this appellant has not brought himself within the provisions of law in that no showing is made that the property was in defendant's possession when seized; therefore there was no showing that he was compelled to testify against himself or his rights against unlawful search and seizure were violated.

The motion for the return of the property should have been directed to the justice of the peace. Rev. Laws, 7431, 7432. Defendant's failure to pursue this remedy constituted a waiver thereof. Neither his person nor house was illegally searched. The affidavit for the search-warrant recites the source of affiant's information and what information he received, and is sufficient. Ex Parte Buncell, 25 Nev. 426.

Even though search-warrant were void, the judgment should be sustained, because the provisions of the constitution, fourth and fifth amendments, apply only to federal agencies and not those of the state. This court cannot review the action of the lower court in denying the motion to return or suppress the evidence, or in admitting it in evidence.

Probable 'cause for arrest can be established upon information and belief. The protection of property is no more sacred. Rosanski v. State (Ohio), 140 N. E. 372. The facts alleged need not be by an eye-witness. Beavers v. Henkle, 48 L. Ed. 882.

Probable cause exists where the belief is founded on reasonable grounds. 32 Cyc. 402; State v. Davis, 22 N. W. 411.

An officer may seize a person before he exhibits the warrant. No act of an officer could invalidate a valid search-warrant. United States v. Rice, 27 Fed. Cas. No. 16,153; State v. Townsend, 4 Del. 488; O'Halloran v. McQuirk, 167 Fed. 493.

In Lamb v. United States, 264 Fed. 660, the jury found the defendant guilty of having possession of an illicit still close to, though not on, his premises, and the higher court refused to disturb the verdict.

That there was no written order or prescription was matter of defense. Miller v. State, 63 South. 269. Recital of the fact in the information was surplusage.

Defendant denied the property was his or found in his possession. Before the seized property may be returned or suppressed as evidence, the defendant must establish that it was in his possession and unlawfully taken. United States v. Koplan, 286 Fed. 969; State v. Laundy, 204 Pac. 976.

The inhibition in the constitution against unlawful searches and seizures applies only to the person, house, papers, and effects, and does not include premises or lands. United States v. McBride, 287 Fed. 215.

The fourth and fifth amendments of the constitution do not apply to the states. States v. Tomm, 191 N. W. 530; People v. Laundy, supra; People v. Mayen, 205 Pac. 435; Comm. v. Wilkins, 138 N. E. 11.

Illegality of the method of obtaining the evidence is collateral to main issue; all the motions in the world cannot make it anything else. A collateral fact cannot be turned into a main fact merely by making a formal motion. Wigmore in Annual Bar Association Journal, August, 1922.

It is the invasion of one's premises and the taking of his goods that constitute the offense prohibited by the constitution, irrespective of what was taken or what use was made of it. The law having declared the articles admissible in evidence, notwithstanding the unlawful seizure, how can the court's error in an independent proceeding for the return of the property add anything to the violation of constitutional rights? People v. Mayen, supra; State v. Myers (Idaho), 211 Pac. 440; State v. Kees, 114 S. E. 617.

Courts do not concern themselves with the adjustment of property rights between wrongdoers, but leaves them as they find them. Duane v. Merchants' Legal Stamp Co. (Mass.), 120 N. E. 370.

The constitution makers did not mean to be so solicitous for the interests of a person accused of crime as to exclude from the jury not only the evidence of his guilt but the thing the possession of which constitutes his crime. State v. Chuchola (Del.), 120 Atl. 212.

One who makes an unlawful seizure can and ought to be punished, but his act should not prevent the use of the thing seized in evidence, and certainly not if its possession constitutes the crime charged. State v. Chuchola, supra.

The application for the return of the property is collateral, wholly independent of the issue involved. People v. Mayen, supra; Welchek v. State (Tex.), 247 S. W. 524.

Defendant has no right to the return of the property, since its possession is illegal, and he did not and could not have any right of property in it.

By the Court, DUCKER, C. J.:

Appellant was convicted in the district court of Elko County of violating a statute making it a gross misdemeanor for any person to have in his possession cocaine and opium without the written order or prescription of a physician, dentist, or veterinary surgeon, licensed to practice in the State of Nevada. Stats. 1920–1921, p. 66. From the judgment of conviction and order denying his motion for a new trial, this appeal is taken.

It appears from the record that a search-warrant commanding any peace officer of Elko County to make search of premises used and occupied by appellant was issued by a justice of the peace of that county, upon an affidavit made upon the information and belief of one J. A. McFarlane. Armed with this search-warrant, officers went to a yard which was used by the appellant as a chicken-yard, located a short distance from a room in which he was living, and digging in the yard found a can containing a number of bindles of cocaine, and another can containing a small amount of opium, and several opium lamps and lamp chimneys. After the search-warrant had been served on appellant, he was taken to the yard in question, and a further search revealed some opium buried in another part of the yard.

There is a conflict in the testimony as to what was said by the appellant concerning his ownership of the premises on which the opium and cocaine were found; the officers testifying in substance that he stated that he owned the yard and chickens, and the appellant testifying that he owned the chickens but not the yard. Prior to the trial, appellant, by his counsel, made a written demand of the court that it order the cocaine and opium seized by the officers under and by virtue of the search-warrant, restored to the premises from which the same was taken, or that it be disposed of as provided by law; and moved the court to suppress the same as

evidence.   The basis for this demand was that the search-warrant was illegal, for the reason, among others assigned, that the affidavit upon which it was issued was made upon information and belief, and was not therefore sufficient to establish probable cause for the issuance of said warrant.   The motion was denied by the court.

On the trial of the case the cocaine and opium seized by the officers was introduced in evidence over the objection of the appellant. . It is insisted that this evidence is illegal and should have been suppressed on appellant's demand and motion; that its admission in evidence is in violation of appellant's right as guaranteed by the fourth and fifth amendments to the constitution of the United States, and by sections 8 and 18 of article 1 of the state constitution, as there was no other evidence before the jury upon which it could legally find the appellant guilty of the offense charged, the judgment should be reversed.

The contention here is, as was urged in the lower court, that the affidavit upon which the search-warrant was issued is insufficient because made upon information and belief.

1.   By reason of the conclusion we reach we deem it unnecessary to determine whether the search-warrant was illegal on this account, or pass upon several points made by respondent against appellant's contention, among which is the point that the chicken-house involved is not within the scope of the constitutional provisions securing people in their persons and houses against unreasonable searches and seizures.   The exact inquiry to which we address ourselves is: Was the evidence complained of admissible as tending to prove appellant's guilt of the offense charged, despite the constitutional objections urged?   It is a doctrine accepted by many state courts that illegality in the mode of obtaining evidence does not affect its admissibility if it tends to prove the issue.   The rule is thus stated by an eminent authority on the law of evidence:

"Though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue. The court will not take notice how they are obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question." 1 Greenleaf on Evidence (16th ed.) 254a.

As pointed out by the editor of the edition, the principle stated in the foregoing section has been regularly applied to incriminating materials, tools, liquor, documents, etc., obtained by the unlawful search of premises, or by unlawful search of the person, or by other unauthorized means. Shields v. State, 104 Ala. 35, 16 South. 85, 53 Am. St. Rep. 17; People v. Le Doux, 155 Cal. 535, 102 Pac. 517; Gindrat v. People, 138 Ill. 103, 27 N. E. 1085; State v. Miller, 63 Kan. 62, 64 Pac. 1033; State v. Burroughs, 72 Me. 479; Commonwealth v. Dana, 2 Metc. (Mass.) 329; Commonwealth v. Wilkins, 243 Mass. 356, 138 N. E. 11; State v. Pomeroy, 130 Mo. 489, 32 S. W. 1002; State v. Flynn, 36 N. H. 64; People v. Adams, 176 N. Y. 351, 68 N. E. 636, 63 L. R. A. 406, 98 Am. St. Rep. 675, affirmed in Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575; State v. Barr, 78 Vt. 97, 62 Atl. 43; State v. Griswold, 67 Conn. 290, 34 Atl. 1046, 33 L. R. A. 227; Benson v. State, 149 Ark. 633, 233 S. W. 758; Williams v. State, 100 Ga. 511, 28 S. E. 624, 39 L. R. A. 269; Welchek v. State, 93 Tex. Cr. R. 271, 247 S. W. 524; City of Sioux Falls v. Walser, 45 S. D. 417, 187 N. W. 821; Commonwealth v. Courtney, 243 Mass. 363, 138 N. E. 16; State v. Myers, 36 Idaho, 396, 211 Pac. 440; State v. Hesse, 154 Minn. 89, 191 N. W. 267; People v. Mayen, 188 Cal. 237, 205 Pac. 435, 24 A. L. R. 1383; State v. Chuchola (Del. Gen. Sess.) 120 Atl. 212; State v. Tonn, 195 Iowa, 94, 191 N. W. 530; State v. Aime (Utah), 220 Pac. 704; Lucchesi v. Commonwealth, 122 Va. 872, 94 S. E. 925; Billings v. State (Neb.), 191 N. W. 721; Calhoun v. State, 144 Ga. 679, 87 S. E. 893; Ex Parte Rankin, 45 Nev. 173, 199 Pac. 474.

This principle was applied by this court in Ex Parte Rankin, supra, recently decided. In that case the petitioner had been informed against in the district court for a violation of the initiative prohibition act (Stats. 1919, c. 1), and sought his discharge from imprisonment by habeas corpus. The point was made that the evidence on which he was held to answer was obtained by and through an illegal search-warrant. On this phase of the case we held that, conceding the information to have been grounded on evidence illegally obtained, the fact was not sufficient to warrant petitioner's discharge on habeas corpus.

In a majority of the cases cited supra the evidence complained of was obtained by an unlawful search and seizure, and was held over constitutional objections to be admissible. The reasons why such evidence is admissible are well stated in State v. Flynn, cited supra:

"Its ground [of the objection] is, rather, that all the information obtained by means of a search-warrant, in a case not authorized by the constitution, is not competent to be given in evidence, because it has been obtained by compulsion from the defendant himself, in violation of that clause of the constitution which provides that no person shall be compelled to furnish evidence against himself. * * * It seems to us an unfounded idea that the discoveries made by the officers and their assistants, in the execution of process, whether legal or illegal, or where they intrude upon a man's privacy without any legal warrant, are of the nature of admissions made under duress, or that it is evidence furnished by the party himself upon compulsion. The information thus acquired is not the admission of the party, nor evidence given by him, in any sense. The party has in his power certain mute witnesses, as they may be called, which he endeavors to keep out of sight, so that they may not disclose the facts which he is desirous to conceal. By force or fraud access is gained to them, and they are examined to see what evidence they bear. That evidence is theirs, not their owners'. If a party should have the power to keep

out of sight, or out of reach, the persons who can give evidence of facts he desires to suppress, and he attempts to do that, but is defeated by force or cunning, the testimony given by such witnesses is not his testimony, nor evidence which he has been compelled to furnish against himself. It is their own. It does not seem to us possible to establish a sound distinction between that case, and the case of counterfeit bills, the forger's implements, the false keys, or the like, which have been obtained by similar means. The evidence is in no sense his."

"This distinction," says Mr. Wigmore in his treatise on Evidence, "has received repeated illustrations and almost universal acceptance, in a variety of applications to documents and chattels obtained by search or seizure independent of testimonial process." 3 Wigmore on Evidence, sec. 2264, and cases cited in note 2.

The mute witnesses in this case were the contraband cocaine and opium which the appellant was endeavoring to keep out of sight. It established, or at least tended to establish, his possession of the interdicted drugs, which constituted the crime charged, unless he had a written order or prescription as provided by the statute. How could the possession of the drugs in any sense compel the appellant to be a witness against himself in contravention of the constitutional guaranty? It was evidence under his control to be sure, but it was entirely independent of anything in the nature of testimonial compulsion. Conceding that the search and seizure in this case was inhibited by section 18, article 1, of the state constitution, the most that can be said is that the evidence showing appellant's possession of the interdicted drugs was obtained through a method unauthorized by law. But this cannot affect their pertinency or render them inadmissible as circumstances tending to prove guilt. If the only evidence obtainable in a given case showing that one had committed a public offense has been obtained through an unreasonable search and seizure, shall the criminal for that reason go unpunished? If so, then in all such cases society is remediless,

and the sanctity of the castle is converted into a sanctity for crime. No principle of law is put aside by the admission of the interdicted drugs in evidence, for the fourth amendment, and the section corresponding thereto in our state constitution, have nothing to do with a rule of evidence. Considered either from their terms or in the light of their historical origin, they were not designed to exclude evidence. It is begging the question to say, as was said in Youman v. Commonwealth, 189 Ky. 152, 224 S. W. 860, 13 A. L. R. 1303, cited by appellant, that the reception of evidence obtained in violation of the search and seizure provisions of the constitution is, in effect, encouragement lent by the court to officers to go without a search-warrant and break open doors and search premises over the protest and in the absence of the owner. There are laws against such things, and appropriate remedies. As said in Shields v. State, supra:

"The law appoints the remedy for the redress of the wrong, but the exclusion of the evidence criminating the defendant, is not within the scope of the remedy, or the measure of redress."

"The only bearing which the fourth amendment can be conceived to have," says Mr. Wigmore in his work on Evidence (vol. 3, sec. 2264), "is that, in case of a seizure under a warrant violating that rule, the seized articles come before the court as illegally obtained. But this circumstance of itself cannot stand in the way of their use as evidence. If there was ever any rule well settled (until the opinion in Boyd v. United States) it was this, that an illegality in the mode of obtaining evidence cannot exclude it, but must be redressed or punished or resisted by appropriate proceedings otherwise taken. There is, therefore, no respect whatever in which the principle of the fourth amendment can be properly invoked in applying the principle of the fifth amendment. For these reasons, judicial opinion, since Boyd v. United States was decided, has generally refused to accept its pronouncement."

2. Counsel for appellant relies upon a line of decisions of the Supreme Court of the United States,

namely, Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319; Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654; Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647; and also some state decisions which have accepted the doctrine which has been laid down by these and other federal cases with reference to the question of the admissibility of evidence obtained by an unlawful search, and the procedure for its suppression. The fourth and fifth amendments to the federal constitution do not govern the several states and the courts thereof. They operate on the national government alone. This is the settled law of this country. Eilenbecker v. District Court, 134 U. S. 31, 10 Sup. Ct. 424, 33 L. Ed. 801; Lloyd v. Dollison, 194 U. S. 445, 24 Sup. Ct. 703, 48 L. Ed. 1062; Ensign v. Commonwealth of Pennsylvania, 227 U. S. 592, 33 Sup. Ct. 321, 57 L. Ed. 658. Consequently it follows that in considering the effect to be given sections 8 and 18 of article 1 of our constitution, which are like the fourth and fifth amendments, we are not controlled by the decisions of the Supreme Court of the United States, as we would be if said amendments were controlling upon the several states and the courts thereof.

We will not attempt to analyze or distinguish the federal cases cited; but, in so far as they hold that evidence obtained by an officer in the course of an unlawful search is illegal, we cannot accept their pronouncement. In this respect the overwhelming weight of state authorities is against them. As said in State v. Tonn, 195 Iowa, 94, 106, 191 N. W. 530–535:

"The due administration of the criminal law would be seriously hampered and in many cases entirely subverted by a strict adherence to this rule. We would not detract one iota from the full protection vouchsafed to the citizen by the constitutional provisions. A trespassing officer is liable for all wrong done in an illegal

search or seizure. The constitutional provision is a sacred right, and one which the courts will rigidly enforce, but that does not mean that the state, in the prosecution of crime, cannot use any proper evidence available to it without stopping to conduct an independent inquiry in the criminal proceeding as to how that evidence was obtained. Great public interests are involved in the due and efficient prosecution of crime. The vital question is whether or not the evidence is competent and relevant to the issue on trial."

In Commonwealth v. Wilkins, supra, after a review of the federal decisions, the court said:

"We are unable to assent to the distinctions established by the federal decisions. The presentation of evidence in court in prosecution of crime is by the district attorney, who for that purpose is the representative of the government. He alone decides what evidence shall be offered. It seems to us that whether physical property seized through an unreasonable search should be received in evidence when presented by the government attorney, cannot soundly depend upon the antecedent and disconnected fact that the unreasonable search by which it was unlawfully obtained was made by a police officer without any warrant instead of by a private individual acting on his own responsibility. The decisions of the United States courts and all other courts appear to be unanimous in holding that in the latter instance property will be admitted in evidence, if otherwise competent, against the owner on trial for a crime. We prefer to adhere to our rule, which makes the competency of evidence depend upon its inherent probative value rather than upon outside circumstances, and which leaves the redress of grievances for invasion of constitutional rights to the usual and adequate provisions of the civil and criminal law."

The case of the People v. Mayen, supra, is as well reasoned as any which have declined to accept the federal rule. In that case certain incriminating articles of personal property had been taken from the apartment of the defendant without his consent under the

authority of an illegal search-warrant. On the day of his trial, several hours before the work of impaneling the jury was commenced, defendant presented· to the trial court his motion for an order requiring the district attorney to return to him the papers and other articles seized under the warrant. This motion was made pursuant to a written petition substantially in the form approved in the case of Weeks v. United States, supra, and upon the ground that the search-warrant was invalid and ineffective, and that therefore the seizure was in violation of the defendant's rights under the fourth and fifth amendments to the constitution of the United States, and sections 13 and 19 of article 1 of the constitution of California. The court denied the motion. Later, when certain of the seized papers were offered in evidence, defendant objected to their reception on the grounds upon which he had made the motion; but the objection was overruled, and various of the documents were admitted. The federal cases were reviewed, and in the course of its opinion the court said:

"It must be admitted, then, that the search and seizure was unreasonable and unlawful and violated the rights of appellant as guaranteed by section 19 of article 1 of the constitution of California.

"Without at all minimizing the gravity of such offense, or the sacredness of the right of every citizen to be secure in his person, home, and property from any unlawful invasion by the state, it does not follow that the subsequent detention and introduction in evidence of the property thus wrongfully taken constituted error on the trial of the appellant.

"The trespass committed in the wrongful seizure of these personal effects by unauthorized officers, and the subsequent use of the same in evidence on the part of the prosecution, were in legal effect entirely distinct transactions with no necessary or inherent relation to each other.

"There was nothing in the character of the articles taken, or in the fact that they belonged to the defendant, which affected their competency as evidence. * * *

"But no authority, so far as we have been able to discover, has suggested that the subsequent use of articles so taken as evidence is in itself any part of the unlawful invasion of such constitutional guaranty. The search and seizure are complete when the goods are taken and removed from the premises. Whether the trespasser converts them to his own use, destroys them, or uses them as evidence, or voluntarily returns them to the possession of the owner, he has already completed the offense against the constitution when he makes the search and seizure, and it is this invasion of the rights of privacy and the sacredness of a man's domicile with which the constitution is concerned.

"The constitution and the laws of the land are not solicitous to aid persons charged with crime in their efforts to conceal or sequester evidence of their iniquity. From the necessities of the case the law countenances many devious methods of procuring evidence in criminal cases. The whole system of espionage rests largely upon deceiving and trapping the wrongdoer into some involuntary disclosure of his crime. It dissimulates a way into his confidence; it listens at the keyhole and peers through the transom light. It is not nice, but it is necessary in ferreting out the crimes against society which are always done in darkness and concealment.

"Thus it is that almost from time immemorial courts engaged in the trial of a criminal prosecution have accepted competent and relevant evidence without question, and have refused to collaterally investigate the source or manner of its procurement, leaving the parties aggrieved to whatever direct remedies the law provides to punish the trespasser, or recover the possession of goods wrongfully taken. The federal authorities relied upon by appellant do not question the general acceptance of this doctrine by the courts, and only differentiate it, in the cases cited, on the ground that persons from whom personal effects are unlawfully taken are entitled to demand and recover possession of their property by application on motion, and that when they have made such timely demand to the tribunal controlling the custody of such property, there should not

be an arbitrary refusal to grant the demand in order to hold the ill-gotten articles as evidence, and the admission of such property thereafter as evidence is held error.

"The right of one whose goods have been unlawfully seized to recover their possession, and that irrespective of its effect in depriving the state of their use in evidence, is not disputed, but the contention, which we think is maintained by the great weight of authority, is that the proceeding for such recovery is independent of the criminal proceeding in which it is sought to use such articles as evidence. Even conceding the right to demand such recovery by motion before the court in which such criminal action is pending, as is apparently the rule in the federal courts and as recognized in some of the state decisions (People v. Kinney, 185 N. Y. Supp. 645; State v. Peterson, 27 Wyo. 185, 13 A. L. R. 1284, 194 Pac. 342), upon what theory can it be held that such proceeding is an incident of the trial, in such a sense that the ruling thereon goes up on appeal as part of the record and subject to review by the appellate court? It seems to us rather an independent proceeding to enforce a civil right in no way involved in the criminal case. The right of the defendant is not to exclude the incriminating documents from evidence, but to recover the possession of articles which were wrongfully taken from him. That right exists entirely apart from any proposed use of the property by the state or its agents.

"Its determination involves the framing of separate issues of fact as to the rights of possession of the goods and the method of seizure, by whom taken, and whether or not the trespass was committed by an agent of the state. The court having tried such issue, and, as in the case before us, denied the relief demanded, we question if under any procedure recognized in the State of California such ruling can be collaterally attacked. As well might a collateral attack upon a judgment roll received in evidence on a trial be maintained on appeal therefrom on the ground that it was invalid because of some extrinsic fraud in its procurement. Only matters incident to the cause of action on trial are subject to review

on appeal therefrom, and for this reason it is held that an objection on the trial to the admission of evidence on the ground that it has been wrongfully seized does not lie, and cannot be reviewed on appeal, but that any rights so involved must be raised in an independent proceeding (10 R. C. L. p. 993; State v. District Court, 59 Mont. 600, 198 Pac. 362), and such is the effect of the rule in Weeks v. United States and Gouled v. United States, supra, as to the independent nature of the proceeding.

"It is our conclusion that any rights determined under such independent proceeding cannot be reviewed under our procedure on the record of appeal from the action in which such evidence was used.

"The fallacy of the doctrine contended for by the appellant is in assuming that the constitutional rights of the defendant are violated by using his private papers as evidence against him, whereas it was the invasion of his premises and the taking of his goods that constituted the offense irrespective of what was taken or of what use was made of it; and the law having declared that the articles taken are competent and admissible evidence, notwithstanding the unlawful search and seizure, how can the circumstance that the court erred in an independent proceeding for the return of the property on defendant's demand add anything to or detract from the violation of defendant's constitutional rights in the unlawful search and seizure?"

We have quoted at length from the foregoing case, for it seems to us that the reasoning employed is sound and unanswerable. It was quoted from with approval in Billings v. State, supra, and accepted as the correct rule in State v. Myers, 36 Idaho, 396, 211 Pac. 440. It is, in fact, a leading case holding to the principle that evidence which is relevant to the issue is admissible, although it may have been obtained illegally and even in violation of the constitutional inhibition against unreasonable searches and seizures.

In Shields v. State, supra, in 1893, it was held that evidence obtained by a search which was illegal and

unauthorized is admissible to fix the guilt of a criminal offense upon the person searched, and the admission of such evidence so obtained is not violative of the constitutional guaranty that a person accused shall not be compelled to give evidence against himself, or of the further guaranty "that the people shall be secure in their persons, houses, papers, and possessions from unreasonable seizures or searches." The court said:

"We adhere to the proposition to be extracted from the authorities to which we have referred, that, however unfair or illegal may be the methods by which evidence may be obtained in a criminal case, if relevant, it is admissible, if the accused is not compelled to do any act which criminates himself, or a confession or admission is not extorted from him, or drawn from him by appliances to his hopes or fears."

This case was followed by the cases of Pope v. State, 168 Ala. 33, 53 South. 292, and Robertson v. City of Montgomery, 201 Ala. 198, 77 South. 724, and which case was also followed by the court of appeals in the case of Bell v. State, 16 Ala. App. 36, 75 South. 181. Later, in 1921, the court of appeals in Banks v. State, 18 Ala. App. 376, 93 South. 293, 24 A. L. R. 1359, reached the conclusion that the ruling of the Shields case was repugnant to and inconsistent with the prohibitions of the Alabama constitution against unreasonable searches and seizures and self-incrimination, and should be overruled. The court of appeals in its opinion called attention to and discussed the federal cases heretofore mentioned, and certified the constitutional question to the supreme court. The supreme court, in a well-considered opinion, upheld the Shields case, pointing out that the doctrine of that case was almost universally supported by the courts of the other states of the Union.

"The reasoning on which the rule rests," said the court, "is said to be that the court, when engaged in the trial of a criminal action, 'will not take notice of the manner in which a witness has possessed himself of papers or other chattels, subjects of evidence, which are

material and properly offered in evidence.' * * * To pursue such inquiry would halt the orderly progress of a cause in the consideration of an incidental question, which has crossed the path of such litigation and 'wholly independent' thereof." Banks v. State, 207 Ala. 179, 93 South. 293, 24 A. L. R. 1359.

It was observed by the Supreme Court of Illinois, in Gindrat v. People, supra:

"Courts, in the administration of the criminal law, are not accustomed to be oversensitive in regard to the sources from which evidence comes, and will avail themselves of all evidence that is competent and pertinent and not subversive of some constitutional or legal right."

Mr. Wigmore says:

"Necessity does not require, and the spirit of our law does forbid, the attempt to do justice incidentally and to enforce penalties by indirect methods. An employer may perhaps suitably interrupt the course of his business to deliver a homily to his office boy on the evils of gambling or the rewards of industry. But a judge does not hold court in a street-car to do summary justice upon a fellow passenger who fraudulently evades payment of his fare; and, upon the same principle, he does not attempt, in the course of a specific litigation, to investigate and punish all offenses which incidentally cross the path of that litigation. Such practice might be * * * consistent with the primitive system of justice under an Arabian sheik; but it does not comport with our system of law. It offends, in the first place, by trying a violation of law without the due complaint and process which are indispensable for its correct investigation. It offends, in the next place, by interrupting, delaying and confusing the investigation in hand, for the sake of a matter which is not a part of it. It offends, further, in that it does this unnecessarily and gratuitously; for since the persons injured by the supposed offense have not chosen to seek redress or punishment directly and immediately, at the right time and by the right process, there is clearly no call to

attend to their complaint in this indirect and tardy manner. The judicial rules of evidence were never meant to be an indirect process of punishment. It is not only anomalous to distort them to that end, but it is improper (in the absence of express statute) to enlarge the fixed penalty of the law, that of fine or imprisonment, by adding to it the forfeiture of some civil right through loss of the means of proving it. For these reasons, it has long been established that the admissibility of evidence is not affected by the illegality of the means through which the party has been enabled to obtain the evidence. The illegality is by no means condoned; it is merely ignored." 3 Wigmore on Evidence, sec. 2183.

The purpose and scope of the constitutional inhibitions against unreasonable searches and seizures is well stated by Lumpkin, P. J., in Williams v. State, 100 Ga. 511, 28 S. E. 624, 39 L. R. A. 269:

"As we understand it, the main, if not the sole, purpose of our constitutional inhibitions against unreasonable searches and seizures was to place a salutary restriction upon the powers of government. That is to say, we believe the framers of the constitution of the United States and of this and other states merely sought to provide against any attempt, by legislation or otherwise, to authorize, justify, or declare lawful any unreasonable search or seizure. This wise restriction was intended to operate upon legislative bodies, so as to render ineffectual any effort to legalize by statute what the people expressly stipulated could in no event be made lawful; upon executives, so that no law violative of this constitutional inhibition should ever be enforced; and upon the judiciary, so as to render it the duty of the courts to denounce as unlawful every unreasonable search and seizure, whether confessedly without any color of authority, or sought to be justified under the guise of legislative sanction. For the misconduct of private persons, acting upon their individual responsibility and of their own volition, surely none of the three divisions of government is responsible. If an official, or a mere petty agent of the

state, exceeds or abuses the authority with which he is clothed, he is to be deemed as acting, not for the state, but for himself only; and therefore he alone, and not the state, should be held accountable for his acts. If the constitutional rights of a citizen are invaded by a mere individual, the most that any branch of government can do is to afford the citizen such redress as is possible, and bring the wrongdoer to account for his unlawful conduct. * * * Whether or not prohibiting the courts from receiving evidence of this character would have any practical and salutary effect in discouraging unreasonable searches and seizures, and thus tend towards the preservation of the citizen's constitutional right to immunity therefrom, is a matter for legislative determination."

We might multiply indefinitely the large list of authorities mentioned supporting the rule that evidence is admissible, if pertinent to the issue, although obtained by an unreasonable, or an unwarranted, or an unlawful, search and seizure, but it would serve no useful purpose.

For the reasons given and upon the great weight of authority, we are satisfied that the motion was properly denied, and that objection to the admissibility of the evidence was properly overruled.

3. The court did not err in refusing to grant appellant's motion to advise the jury to acquit for the reason that the evidence was insufficient to warrant a conviction. The motion was made upon the grounds, first, that it had not been proved that appellant was in possession of the opium or cocaine introduced in evidence; secondly, that the state failed to prove that the defendant did not have a prescription or written order of a physician, dentist, or veterinary surgeon licensed to practice in this state; and thirdly, that the state had failed to prove that the appellant had any knowledge of the articles introduced in evidence as having been on his premises.

On the oral argument in this case, counsel for the appellant admitted that the second ground urged on the motion was not well taken. This is true. If the appellant had a written order or prescription as provided by

the statute, it would be a matter of defense. State v. Ah Chew, 16 Nev. 50, 40 Am. Rep. 488. As said in that case:

"These facts would be peculiarly within his knowledge, and could be established by him 'without the least inconvenience, whereas if proof of the negative were required the inconvenience would be very great.'" 1 Greenleaf on Evidence, sec. 79.

The evidence is sufficient to justify the verdict of guilty. The interdicted drugs were found on premises admittedly used and occupied by appellant as a place to keep his chickens and to which he had constant access and which was in close proximity to the place where he lived.

4. According to one witness, he said that the yard where a number of cans of opium were found was his yard. A number of bindles of cocaine, cans of opium, opium lamps, and lamp chimneys were found concealed in the ground at different places on the premises. True, the appellant at the time of the search and seizure and on the trial denied all knowledge of the same, but his unlawful possession under these circumstances was a question for the jury. It was not incumbent on the state to prove that appellant placed the interdicted drugs upon his premises, or knew of their presence there. The statute makes the possession unlawful. Lack of knowledge of such possession is a matter of defense. State v. Freeland, 106 S. C. 220, 91 S. E. 3. See, also, Pate v. State, 16 Okl. Cr. 62, 180 Pac. 559.

The judgment is affirmed.