(90 South. 410)

No. 24940.

## STATE v. HUTCHINS.

(Jan. 2, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Larceny** ⚌51(1)—**Possession may be shown after date specified in bill of particulars.**

Evidence that one accused of larceny, on the day after the date of the theft specified in the bill of particulars, was offering to sell the alleged stolen property was admissible, where it did not purport to show on what day the theft was committed.

2. **Criminal law** ⚌599—**No continuance by reason of surprise.**

One prosecuted for larceny was not entitled to a continuance because surprised by legitimate evidence that the day after the alleged theft he was in possession of the alleged stolen property, and was offering it for sale.

3. **Criminal law** ⚌593, 657—**Sending counsel to jail and denying continuance held not erroneous.**

In a prosecution for larceny, where a member of the firm of attorneys representing accused appeared to be intoxicated and was very disrespectful to the court and was taken to jail by order of the court, *held* that the action of the court in sending counsel to jail and denying a continuance was not erroneous; accused being well represented by other members of the firm.

4. **Criminal law** ⚌1169(6)—**Evidence of theft of more property than alleged held harmless.**

In a prosecution for theft of 80 cross-ties, accused cannot complain of admission of evidence that 81 cross-ties were stolen, especially where the verdict was for petty larceny; that is, for a smaller number of cross-ties than 80.

5. **Criminal law** ⚌404(4)—**No error in admitting one of 80 cross-ties stolen in evidence and in making remark.**

In a prosecution for theft of 80 cross-ties, accused cannot complain of ruling of court allowing one of the cross-ties to be brought into court and exhibited to the jury without all of them being brought in, the purpose of bringing in one being to show how the original branding had been defaced, especially where the court offered to let the accused have all of the cross-ties brought in and exhibited to the jury if he

so desired, although the court remarked that "he was not going to convert his courtroom into a lumber yard."

6. **Criminal law** ⚌1178—**Bills not insisted on deemed waived.**

Bills of exception, not insisted on in the brief, are assumed to be waived.

Appeal from Second Judicial District Court, Parish of Webster; Robert Roberts, Jr., Judge.

Floyd Hutchins was convicted of petty larceny, and appeals. Affirmed.

Drew & Drew, of Minden, for appellant.

A. V. Coco, Atty. Gen., R. H. Lee, Dist. Atty., of Minden (T. S. Walmsley, of New Orleans, of counsel), for the State.

BAKER, J. On an information for grand larceny, punishable at hard labor, the accused was convicted of petty larceny, punishable in parish prison, and was sentenced to six months in the parish prison.

[1] The charge was the stealing of 80 cross-ties. In response to the request for a bill of particulars the prosecution fixed the date of the alleged theft as of March 3d. The evidence offered on the trial showing that on March 3d the accused offered to sell the cross-ties as belonging to him, accused objected on the ground that the prosecution could not be allowed to prove any other date for the alleged crime than that specified in the answer to the bill of particulars. The evidence was certainly admissible. It showed that on the day after the theft the accused was in possession of the stolen goods. It did not purport to show on what day the theft was committed.

[2] In bill No. 4 the accused relates that after the said evidence had been admitted he moved for a continuance on the ground that it had taken him by surprise. The said evidence, whether it took the accused by surprise or not, was admissible, for the purpose of showing that the stolen goods were

found in his possession; and an accused will hardly contend seriously that he is entitled to a continuance whenever legitimate evidence produced against him happens to take him by surprise.

[3] The per curiam of the trial judge disposes very thoroughly of the bills of exception Nos. 2 and 3. It reads:

"On the date referred to all three members of the firm of Drew, Drew, and Wallace appeared in defense of the accused. H. C. Drew, however, assumed a leading rôle in the conduct of the defense. The counsel referred to last was visibly under the influence of liquor, and his condition such as to cause him repeating over and over unnecessary questions to jurors to prolong to an unreasonable degree the selection of a jury for the trial of the case. The court, observing Mr. Drew's condition, announced the rule referred to in bill No. 2 with a view of curtailing to reasonable limits the time consumed in the selection of the jury. On the expiration of the time limit fixed by the court, Mr. Drew arose and defiantly announced that he would neither accept nor reject the juror D. T. Clement. Feeling sure Mr. Drew's defiance and disrespectful attitude toward the court was attributable entirely to his being under the influence of liquor and desiring to avoid the infliction of punishment on Mr. Drew, the court summoned Mr. A. S. Drew to the bench and suggested a short recess would be announced during which he would prevail upon Mr. H. C. Drew to retire from the conduct of the case and from the courtroom until such time as his condition would insure against a recurrence of the defiant outburst which had just occurred. Mr. A. S. Drew assented to the court's suggestion, the recess was announced, but Mr. H. C. Drew declined to avail himself of the considerate suggestion of the court conveyed to him through his brother. Still desiring to show Mr. H. C. Drew all the consideration possible consistently with the maintenance of decorum, the dignity of the court, and the dispatch of the case under trial, the court beckoned Mr. H. C. Drew to the bench, and, announcing another recess, retired with Mr. Drew and Sheriff A. H. Phillips to the judge's private office, where the court renewed in person the suggestion already made that Mr. Drew retire from the courtroom until such time as his condition would make it proper for him to take part in the trial of the case. Mr. Drew took issue with the court and with the sheriff as to his condition, and, returning into the courtroom, announced, in substance, that he was no more drunk than the court or anybody else in the courtroom, and that he would remain in charge of the trial of the case unless the court sent him to jail, whereupon the court directed the sheriff to take Mr. Drew to jail. Following this incident Mr. A. S. Drew suggested to the court that the incident described might have a prejudicial effect upon the jurors already selected as well as those remaining in the jury box unexamined. The court, deeming the suggestion proper, announced that the jurors in the box would be excused, and, it being then about 11 o'clock a. m., announced a recess until 2 p. m. in order to permit Mr. A. S. Drew and Mr. Wallace to make a motion for continuance and such other preparation as they might desire before resuming trial of the case.

"Upon the reconvening of court at 2 p. m. after the motion for a continuance had been overruled, Mr. A. S. Drew on behalf of the defendant arose and specially requested the court to recall the same jurors who were in the box when court recessed at 11 o'clock. Counsel for the state announced that they would not oppose the request, and accordingly the same jurors were recalled, and after the court had instructed the jurors to disregard the incidents above described, counsel for defendant, Mr. A. S. Drew, resumed examination of the juror D. T. Clement. The five-minute rule was relaxed by the court, as being no longer necessary, and, after examining the juror as long as desired, Mr. Drew finally excused him.

"As to the complaint that Mr. H. C. Drew was the only member of the firm familiar with the case the testimony developed the fact that Mr. Wallace was the only member of the firm who visited the scenes of the alleged crimes, and that Mr. Wallace had interviewed the witnesses, examined the ties, and had conferred with the accused. Two days were consumed in the selection of the jury, and about 2:30 p. m. on Saturday, upon the completion of the jury, the court recessed until Monday morning at 9 o'clock.

"Whatever lack of preparation Mr. A. S. Drew may have felt was evidently overcome during the delay which intervened between 2:30 p. m. Saturday and 9 a. m. on the following Monday, as he conducted the defense with marked ability and with the assistance of Mr. Wallace and some assistance rendered during the trial by Mr. H. C. Drew he succeeded in procuring a verdict which, under the circumstances, was really a victory.

"As to the third paragraph in the motion

for a continuance the court is of course unable to say to what extent the counsel had imbibed, but his appearance, his manner, his disrespectful attitude toward the court, his defiance toward the court's rulings, instead of respectfully excepting and then carrying the ruling up for review, all combined to convince the court that Mr. Drew was in no condition to try the case.

"As to paragraph No. 4 it may have been true that Mr. Drew entertained feeling of animosity toward the court, but it is certain that the court neither then nor now has any feeling of animosity toward Mr. Drew, nor any occasion for such feeling. The court lays no claim to infallibility in its rulings, and in this case and in all cases freely and cheerfully conceded the right, privilege, and even the duty of counsel to except to the court's rulings at times, and to have the same reviewed. When in a normal condition, no member of the bar is more courteous and respectful toward the court and its rulings than is Mr. H. C. Drew, and had Mr. Drew been in a normal condition on the morning of July 22d the court feels sure that the court's rulings, however erroneous Mr. Drew might have deemed them, would not have provoked him to defy and treat the court with contempt.

"While the court has nothing but the kindest feelings towards Mr. Drew personally, the court did and does and will in the future disapprove most emphatically of any attorneys appearing before the court for the trial of a case while such attorney is sufficiently under the influence of liquor as to cause him to treat the court and its rulings with contempt.

"After the jury was completed Mr. H. C. Drew returned into court, participated in the trial, and took part in the argument of the case.

"In the final charge to the jury the court again instructed the jury to disregard the incident complained of, and feels quite sure the accused was not prejudiced thereby, to which ruling of the court counsel excepted in open court in the presence of the jury, and reserved his bill of exception, which was noted to the end that the matter might be made of record, and the same is signed, nunc pro tunc, as of July 22, 1911."

Our judgment on these two bills is that, under the circumstances, our brother below was very considerate, and, we will add, commendably so, since, as otherwise appears, a fire had occurred at the counsel's house the night preceding the day of the trial, which, together with the attending circumstances, had deprived him of full opportunity for sleep and rest the night before.

[4] The complaint of bill No. 5 is that evidence of 81 cross-ties having been stolen, instead of 80, as alleged in the information, was admitted over objection. This bill can hardly be seriously urged, especially in view of the fact that the verdict was only for petty larceny; i. e., for a smaller number of cross-ties than 80.

[5] Bill No. 8 has reference to the ruling of the judge allowing one of the cross-ties to be brought into court and exhibited to the jury without all of the 81 being brought in, the purpose of bringing in one cross-tie into court being to show how the original brand had been defaced. The judge offered to let the accused have all of the cross-ties brought in and exhibited to the jury if he so desired. The bill mentions that the cross-ties were "just across the street, not more than 50 yards from the courthouse." If so, it would have been easier to take the jury to them than to bring them to the jury. It seems that in making his ruling the judge remarked that "he was not going to convert his courtroom into a lumber yard." He, doubtless, entertained the same impression of the lack of merit of this bill that we have.

[6] Bills Nos. 7 and 8 are not insisted on in the brief, and, we assume, are waived. They have no merit.

Judgment affirmed.