OVERTON, J.
 

 George Bonoa was informed against for unlawfully possessing five hundred of the plants known as Marajuana. The possession of the plant is made an offense by Act No. 41 of 1924, which reads as follows:
 

 “An act to prohibit the sale, possession, transportation, delivery or using'for manufacture of the Mexican plant known as Cannabis Indica, Cannabis American or Marajuana and the derivatives therefrom, and to provide penalties for the violation of this act.
 

 
 *958
 
 “Section 1. Be it enacted by tbe Legislature of Louisiana, That no person shall possess, sell, dispose of, transport, deliver, in any form whatever in the State of Louisiana, the plant known as Marajuana, or any of its derivatives, either dried, or in the form of cigarettes, tobacco or any other way whatsoever.
 

 “•Section 2. No person shall possess, sell, deliver, dispose of or manufacture any cigarette, tobacco, or other smoking or chewing or snuffing article which either in whole or in part contains any plant either in the dried form or otherwise of the Mexican plant known as Marajuana.
 

 “Section 3. That any person who shall violate any of the provisions of this act shall be guilty of a misdemeanor, and upon conviction shall be fined* not less than fifty dollars ($50.-00) nor more than one thousand dollars ($1,-000.00) and imprisoned in the Parish jail for not less than thirty (30) days nor more than six (6) months.
 

 “Section 4. The provisions of this act shall not be construed to apply to the sale, distribution, giving away, dispensing or possession of preparations and remedies which do not contain more than one-half gram of the solid extract of Cannabis Indica, Cannabis America or Marajuana or its equivalent to one fluid ounce, or liniments, ointments or other preparations which are prepared for external use only; provided such remedies and preparations are prescribed, sold, distributed, given away, dispensed or possessed as medicines and not to evade the purpose of this act.
 

 “Section 5. That no court shall have the power or authority to suspend the sentence of any person or persons convicted under the provisions of this act. .
 

 “Section 6. That all the laws, or parts of laws in conflict with the provisions of this act, be and they are hereby repealed.”-
 

 The information rests upon facts showing that defendant had a number of the Marajuana plants growing in what is termed a second back yard, immediately in the rear of the first, a shed separating the two yards, through which one had to go to enter the second from the 'first. Some of the plants had grown to be as much as six or eight feet tall. Defendant admitted, at the time of their discovery, that the plants were his.
 

 Defendant was found guilty of the charge, and was sentenced to pay a fine of $500 and to serve six months in jail, and, in default of payment of the fine, to serve six months additional in jail.
 

 The record contains three bills of exception. Only one of them is argued or presented, the remaining two not being mentioned. The presumption is that the two bills, not presented, are abandoned. State v. Briggs, 142 La. 785, 77 So. 599; State v. Schuermann, 146 La. 110, 114, 83 So. 426; State v. Hutchins, 149 La. 1077, 90 So. 410. We have examined the two bills abandoned, and find that they are without merit.
 

 The bill, relied upon for a reversal, is one taken to the overruling of a motion to quash the bill of information. This motion rests upon the ground that section 1 of Act No. 41 of 1924, under which the defendant is prosecuted, is unconstitutional, null, and void, in so far as it attempts to prohibit the possession of plants termed Marajuana, ■ as the section, by so doing, seeks to prohibit the possession of something unknown, for, it is urged, there is no such plant known as Marajuana, and hence the terminology used conveys to the people of the state no conception of what is prohibited. The motion also rests upon the ground that the section, so far as it prohibits the possession of the Marajuana plant, is violative of section 1 of article 1 of the Constitution of 1921, defining the origin and end of government, of section 2 of that
 
 *960
 
 article, providing that no person shall be deprived of life, liberty, or property, except by due process of law, of section 15 thereof, providing that this enumeration of rights (refering to the Bill of Rights, appearing as article 1 of the Constitution) shall not be construed to deny or impair other rights of the people not herein expressed, and of the Fourteenth Amendment of the Constitution of the United States, in so far as it relates to the deprivation of liberty' and property without due process of law.
 

 The theory of the accused sefems to be that although the Marajuana plant may be used in forms, such a§ cigarettes or tobacco, injurious to the public health, morals, and safety, yet it may be used for valuable purposes, such as the manufacture of hemp rope and twine, in the preparation of useful drugs, and for the production of seed, which forms a large part of the rations of the millions of pet canary birds in this country, and that, only in so far as the plant is sold, used, and possessed for deleterious purposes, may such sale, use, or possession be prohibited, without infringing, in violation of the State and Federal Constitutions, upon the liberty of the people.
 

 We do not find any difficulty in holding that the use of the wprd, '“Marajuana,” in connection with the word, “plant,” conveys to the mind exactly what the Legislature intended to convey, namely the plant scientifically known as Cannabis Indica or Cannabis Amer. ica, though there possibly may be some slight and unimportant botanical difference between the two, but apparently none m its effects upon the human system. It is true that the word is not found in dictionaries ordinarily used, but it is found in the American Illustrated Medical Dictionary, where it is spelt “Mariahuana,” and in the Encyclopedia Brittanica (1929-14 Ed.), in the article on “Hemp”, where it is spelt “Marijuana,” and in the statutes of at least two other states; namely, New Mexico, where it is spelt, “Mariguana” (Chapter 42 of Laws of New Mexico, 1923, p. 58), and Texas, where it is spelt “Marijuana” (Vernon’s Annotated Criminal Statutes, 1925, vol. 2, Pen. Code, chapter 3, art. 720). In these statutes the word seems to be used in reference to some drug or preparation from the plant Cahnabis Indica or Cannibis Sativa. However, the application of the name of the drug or preparation to the plant, as, for instance, the “plant known as Marajuana,” could hardly be misleading, even assuming that the word more properly refers to the drug or preparation than to the plant itself. Besides, whatever doubt there may be as to what was meant by the use of the word is removed, not only by the title of the act, where the plant is referred to as “Cannabis Indica, Cannabis America, or Marajuana,” but also by section 4 of the' act, where the plant is similarly designated, the name “Cannabis Indica” being well known scientifically. We therefore have no hesitancy in overruling this ground of the motion to quash.
 

 The remaining question to be considered is whether section 1 of the act, in so far as it prohibits the possession of the Marajuana plant in any form whatsoever, is an infringement upon liberty and the rights to property, in violation of the Constitution of this state and of the Fourteenth Amendment of the Constitution of the United States.
 

 One who has upon his premises, to his knowledge, a growing crop of Cannabis Indica, or Cannibis Americana, or Marajuana, or any .number of the plants growing thereon, possesses these plants within the meaning of section 1 of the statute. The section is sufficiently broad to cover the plants in their growing form as well as in their dried form, for it prohibits their possession either dried,
 
 *962
 
 or in the form of cigarettes, or tobacco, or in any other way whatsoever.
 

 The plant contains a drug, known as Cannabis, which is deleterious and of dangerous propensities. The effects of the drug are obtainable, without difficulty, by almost any one, from parts of the plant. The plant grows, or may be grown, over a large part of the subtropical world. We quote the following from -Solis Cohen Githens’ Pharmacotheraupeutics, 1928 Edition, pages 1702 to 1703,' concerning the drug and plant.
 

 “Cannabis, like morphine, is a drug of great antiquity and of great historical interest, but, unlike it, is of little importance in therapeutics. It consists of the flowering tops of the female plant of the Indian Hemp or Cannabis Sativa, which grows over a large part of the subtropical world. It was formerly stated that only plants grown in the East (C. Indica) were active, but although those grown in Germany were found inert, some American specimens (O. Americana) are equal to the best Indian plants. * * *
 

 “The Eastern forms of the drug mostly in use as intoxicants are (1) the resin, ‘churus’ or ‘charas’; (2) the young leaves and twigs scraped off at the time of flowering, ‘bhang’ or ‘hasehisch’; (3) The leafless twigs tied in bundles, ‘ganjah’ or ‘gunjah’. For smoking, especially in Turkey, it is often mixed with tobacco. * * *
 

 “Symptoms of Poisoning. These vary extremely with race and individual susceptibility, as well as with habituation and dose. The first symptom is usually an exaltation of the mind with a rapid flow of pleasant ideas and images, associated with a peculiar sense of lengthening of time and space, so that the passage of a few minutes is conceived as hours, and objects near at hand appear a long distance away. A phantasmagoria of ideas passes through the mind, the person being only half conscious that they are his own imaginings. The ideas are joyous, and laughter and merriment as well as affectionate feelings for others are often noted. The sense of pain is lessened and all disagreeable conceptions are forgotten. There may be true hallucinations, but usually the visions are of the character of dreams, and disturbed by any sensory impression. Sleep follows, deep and tranquil, or troubled by constant dreams. When aroused from sleep, and the attention attracted, the mind acts normally, but as soon as it is undisturbed, it passes into the same somnolent condition, which lasts for several hours and is followed by a sense of weakness and extreme mental depression. In certain eastern people, especially the Malays, perhaps because of continued use, the somnolent action is replaced by complete loss of judgment and restraint such as is seen more often from alcohol. An Arab leader, fighting .against the crusaders, had a bodyguard who partook of hasehisch, and used to rush madly on their enemies, slaying everyone they met. The name of ‘haschischin’ applied to them has survived as ‘assassin.’
 

 “The habitual use of cannabis does not lead to much tolerance, nor do abstinence symptoms follow its withdrawal. It causes, however, a loss of mentality, resembling dementia, which can be recognized even in dogs (Framkel).”
 

 In Busby, Bliss & Ballard on “The properties and Uses of Drugs,” (1930 Ed.), it is said:
 

 “The use of cannabis in its own home, mostly in the form of-the product called Hashish, is to pander to a vicious narcotic habit, very much as opium is used by the orientals. The particular narcosis of cannabis consists in the liberation of the imagination from all restraint. The imaginary experiences and
 
 *964
 
 sensations are intensely realistic and the subject has all the delight of the actual experiences which appeal most strongly to his particular ideas of pleasure. In the reaction which soon follows, he passes through imaginings of a converse order, with sufferings that áre measured by the intensity of his preceding pleasures. Not rarely, in this state, an irresistible impulse to the commission of criminal acts will be experienced. Occasionally, an entire group of men under the influence of this drug will rush out to engage in violent or bloody deeds.”
 

 The act was passed under the police power of the state. In State v. McCormick, 142 La. 580, 77 So. 288, 289, L. R. A. 1918C, 262, it was said: “ ‘The legitimate exercise of the police power is not subject to restraint by constitutional provisions for the general protection of rights of individual life, liberty, and property.’ State v. Schlemmer, 42 La. Ann. 1166, 8 So. 307, 10 L. R. A. 135. And the Fourteenth Amendment to the Constitution of the United States does not interfere with the proper exercise of th: ' power. 6 R. C. L. pars. 193, 194; L’Hote v. New Orleans, 177 U. S. 596, 20 S. Ct. 788, 44 L. Ed. 903.”
 

 The Marajuana plant is a plant possessing properties deleterious to health and dangerous to the public safety and morals. What adds to its danger is that parts of it, such as the flowers of the female plant and the small leaves and twigs of the plant, may be put in condition for deleterious and dangerous use with ease by almost any one. To permit the plant to be possessed in the state, even in its growing form, is virtually as unsafe as to permit its possession in the manufactured forms of cigarettes and tobacco, so readily and easily may it be converted into those forms.
 

 The Marajuana plant is not one of the crops of this state. While the plant may be put to valuable uses, nevertheless, its deleterious properties may be fairly considered as outweighing those uses.
 

 It is not a sufficient answer to say against this position that if the possession of the Marajuana plant may be prohibited in the dried or any other form, which includes the plant in its growing form, why not, by a parity of reasoning, prohibit the possession of corn, because whisky may be made out of it, or the possession of grapes, • because wine may be made out of them, or the possession of poppies, because opium may be extracted from them, if such be so with the poppies grown here. The situation, however, is entirely different as to these. Not only is whisky and wine less injurious than Marajuana, but it is far more difficult to manufacture them than it is to prepare the Marajuana plant for injurious purposes. Moreover, to suppress the possession of all things out of which whisky or wine may be made would come near destroying civilization itself. As to poppies, if opium may be éxtracted from the species, sometimes grown here, it is obvious that the extraction is too difficult to accomplish to be carried on clandestinely to any extent, and, if it should be done openly, the manufacture and disposition of the product could be comparatively easily controlled by governmental regulations.
 

 In our view, the Legislature has not exceeded its powers by enacting section 1 of the act.
 

 The judgment is affirmed.