## STATE v. NAVARO

No. 5430. Decided November 17, 1933. (26 P. [2d] 955.)

*Wm. Reger* and *David H. Oliver*, both of Salt Lake City, for appellant.

*Joseph Chez*, Atty. Gen., and *John D. Rice*, Deputy Atty. Gen., for the State.

FOLLAND, Justice.

The defendant was convicted of the crime of unlawful possession of mariguana. He appeals and makes fourteen separate assignments of error which have been grouped and argued by appellant under two general heads: (1) Insufficiency of the information to charge a crime and of the evidence to support the verdict; and (2) failure of the state to prove the negative allegations of the information.

The information charged:

"That the said Pablo Navaro, on the 6th day of February, A. D. 1933, at the County of Salt Lake, State of Utah, did wilfully, unlawfully and feloniously have possession of marijuana, the said Pablo Navaro not then and there having possession of the said marijuana upon the written order or prescription of a reputable licensed practicing physician, licensed dentist, or licensed veterinary surgeon, and the said Pablo Navaro not then and there being a jobber, wholesaler, or manuacturer of marijuana to retail druggists, nor a retail druggist, nor a regular reputable licensed practicing physician, nor a dentist, nor a veterinary surgeon, nor a manufacturer of proprietary of pharmaceutical preparations which require marijuana in the manufacture of said preparations, nor the agent or officer of any hospital, college, scientific or public institution, and the said marijuana not being a preparation recognized by the United States Pharmacopoeia or as a standard proprietary remedy. * * *"

The statute under which this charge was made is Comp. Laws Utah 1917, § 4432, as amended by Laws of Utah 1927, c. 65, and reads in part as follows:

"It shall be unlawful for any person, firm, or corporation to sell, furnish, or give away, or offer to sell, furnish or give away, or to have in possession, any cocaine, opium, morphine, codeine, heroin, peyote (mescal button), alpha eucaine, beta eucaine, nova caine, flowering tops and leaves, extracts, tinctures, and other narcotic preparations of hemp or loco weed, (cannabis sativa, Indian hemp), mariguana, or chloral hydrate, or any of the salts, derivatives, or compounds of the foregoing substances, or any preparation or compound containing any of the foregoing substances, or their salts, derivatives, or compounds, excepting upon the written order or prescription of a physician, dentist or veterinary surgeon licensed to practice in this State. * * *"

The evidence shows that defendant was stopped on a public street in Salt Lake City by two police officers; that one of them pushed defendant's sweater open and drew from his shirt pocket a package containing ten cigarettes done up in brown papers. The officers testified that the defendant said in answer to their questions that the package belonged to him and that it contained mariguana. That he made such statements was denied by defendant testifying in his own

behalf. The city chemist made an examination of the contents of the package and testified he found the cigarettes contained American cannabis or mariguana; that "cannabis is commonly known as a drug, but it is not a drug from a scientific standpoint. Cannabis is a scientific name of a genus of herbs. It is a Latin word meaning hemp." It was stipulated that the state chemist, if present, would testify that cannabis is a drug.

It is appellant's contention that the statute does not prohibit possession of mariguana itself, but that it prohibits possession of the flowering tops and leaves of mariguana, the tincture, extract, or other preparations of mariguana, and that the information, in order to charge an offense under the statute, should have charged unlawful "possession of the flowering tops and leaves of mariguana" instead of directly charging unlawful "possession of marijuana." This view is predicated on: (a) The grammatical construction of the first sentence of the statute above quoted, and (b) the definition of the word "mariguana" which appellant claims means or signifies a plant and not a drug.

Counsel for appellant filed helpful briefs which indicate an exhaustive study of and reference to substantially all the available literature on the subject of the plant scientifically known by the name of cannabis sativa, and otherwise referred to as hemp or loco weed, and the drug cannabis under the various names by which it is known. Whether "mariguana" is another name for the plant cannabis sativa or for the drug cannabis is the object of this investigation.

The word "mariguana" is not found in most of the ordinary dictionaries of the English language, nor is it directly defined in any of the medical or scientific dictionaries available to us. It is, however, defined in the New Standard Dictionary (1928) p. 1514, as follows: "Marihuana, n. (Mex.) A narcotic plant reputed to cause insanity in persons drinking an infusion of its leaves or smoking them. Mariguana."

It is a word of Mexican origin and has come into common use in the south and west portions of the United States. It is found in the statutes of several of the states of the Union, including this state, and is variously spelled either mariguana, marijuana, mariahuana, marajuana, maraguana, or marihuana. The word, however spelled, is the same word and refers to the same thing. No point is made by appellant that it is spelled differently in the information than in the statute. Under the ordinary canons of construction of statutes we are required to give the word its plain, natural, ordinary, and commonly understood meaning, in the absence of any statutory or well-established technical meaning, unless it is plain from the statute that a different meaning is intended. The definition may depend on the character of its use in the statute, 59 C. J. 974; *State* v. *Hendrickson,* 67 Utah 15, 245 P. 375, 57 A. L. R. 786. There is a growing body of literature with respect to mariguana and its uses, but this is found mainly in magazines and newspapers rather than in the standard scientific works. The reason for this is that "mariguana" is not a scientific name either of a plant or a drug; but is a word in local use and of comparatively recent origin in the United States. From our reading on the subject we have reached the conclusion that as used in our statute it means or refers to the preparation or product from the plant scientifically known as cannabis sativa, and is the same product or preparation described in the technical dictionaries and books as cannabis; that it is a word of common use in this locality and its meaning is well understood.

In the United States Dispensatory (21st Ed., 1926), cannabis is defined as:

"Cannabis is the dried flowering tops of the pistillate plants of Cannabis sativa Linne (Fam. Moraceae). * * * Indian Hemp consists of the dried flowering or fruiting tops of the pistillate plant of Cannabis sativa, Linn., grown in India; from which the resin has not been removed." Br.

"Cannabis indicae, Br.; Hemp, Indian Hemp; Guaza, Ganjah, Herba Cannabis Indicae; Chanvre, Chanvre de l'Inde, Fr.; Indischer Hanf. G.; Canamo, Sp.; Marihuana, Mex.

"The Canabis sativa, or hemp plant, is a tall, rough annual, from four to sixteen feet or more in height, with erect, branching, angular stem," etc.

"American cannabis is yielded by Cannabis sativa plants cultivated in various sections of the United States. It occurs on the market in the form of broken segments of the inflorescences and more or less crumpled and broken leaves, varying in color from brownish-green to light brown."

Similar definitions of cannabis are found in "Properties and Uses of Drugs" by Rusby, Bliss and Ballard (1930), The Tenth Decennial Revision Pharmacopoeia of the United States, official from January 1, 1926, page 95, and Steadman's Medical Dictionary (1926 Ed.) p. 155.

Mariguana is referred to in 2 Encyclopaedia Britannica (14th Ed.) p. 420, in the article entitled "Hemp," which it defines as "an annual herb (Cannabis sativa) having angular rough stems and deeply lobed leaves. The best fibres of Cannabis are the hemp of commerce, but the products from many totally different plants are often included under the general name of hemp. * * *

"Hemp is now cultivated for fibre production in Russia, Italy, Jugoslavia, Rumania, Hungary, Poland, Spain, Belgium, France, Turkey, China, Japan, the United States and Chile. Other forms are cultivated for the narcotic drug cannabin, known in different forms and in different countries as hasheesh, bhang, gunga, charras, kif, and marijuana, in India, Arabia, Africa and Mexico."

See, also, "The Opium Problem," by Terry and Pellens (1928) page 809, where it is said:

"More recently, another group of drugs has found its way into the anti-narcotic laws of a number of the states. This group is included under the genus of cannabis sativa which includes the two species cannabis indica and cannabis americana. * * * This drug is also known under the Spanish name of Mariahuana."

The use of the word "mariguana" by physicians, chemists, police officers, persons who smoke it, and by this court is indicated in our decisions. In *State* v. *Diaz*, 76 Utah 463, 290 P. 727, 729, the defendant, who was charged with mur-

der, took the stand and testified, among other things, that prior to the homicide he had been drinking liquor and smoking mariguana, and that after the smoking of mariguana he became very crazy. We quote from the decision:

"A physician, called by the defendant testified as to the effect of the use of marijuana. He stated that it is a narcotic and acts upon the central nervous system affecting the brain, producing exhiliarating effects and causing one to do things which he otherwise would not do and especially induces acts of violence; that violence is one of the symptoms of an excessive use of marijuana; that one who had used considerable liquor and also marijuana would have an aggravated condition as a result of the marijuana and that the effects of such use might last several days; that the mental condition would be very much aggravated if the individual had been using intoxicating liquor and thereafter had smoked a considerable amount of marijuana and would not be altogether accountable for what he did. That the marijuana produces an 'I don't care' effect. A man having used liquor and marijuana might deliberately plan a robbery and killing, and carry it out and escape, and then later fail to remember anything that had occurred." See, also *State* v. *Franco*, 76 Utah 202, 289 P. 100.

It would seem from the above that the word, when used without qualifying or modifying words, indicates the product or preparation consisting of the flowering tops, leaves, and seeds of the plant, rather than either the whole plant, or the fibrous stalks thereof. That such is the meaning of the word elsewhere is clearly indicated by cases and statutes from other states. In *State* v. *Bonoa*, 172 La. 955, 136 So. 15, 16, the defendant was charged with having possession of 500 of "the plants known as marajuana" under a statute making it unlawful to possess, sell, etc., "the plant known as marajuana, or any of its derivatives, either dried, or in the form of cigarettes, tobacco or any other way whatsoever." The defendant there objected that there was no such plant known as mariguana, and hence the terminology used conveyed to the people of the state no conception of what was prohibited. The court in holding against defendant's contention said:

"We do not find any difficulty in holding that the use of the word, 'marajuana,' in connection with the word, 'plant,' conveys to the mind exactly what the Legislature intended to convey, namely the plant

scientifically known as Cannabis Indica or Cannabis America, though there possibly may be some slight and unimportant botannical difference between the two, but apparently none in its effects upon the human system. It is true that the word is not found in dictionaries ordinarily used, but it is found in the American Illustrated Medical Dictionary, where it is spelt 'Mariahuana," and in the Encyclopedia Brittanica (1929, 14 Ed.), in the article on 'Hemp,' where it is spelt 'Marijuana,' and in the statutes of at least two other states, namely, New Mexico, where it is spelt, 'Mariguana' (Chapter 42 of Laws of New Mexico, 1923, p. 58), and Texas, where it is spelt 'Marijuana' (Vernon's Annotated Criminal Statutes, 1925, vol. 2, Pen. Code, chapter 3, art. 720). In these statutes the word seems to be used in reference to some drug or preparation from the plant Cannabis Indica or Cannibis Sativa. However, the application of the name of the drug or preparation to the plant, as, for instance, the 'plant known as Marajuana,' could hardly be misleading, even assuming that the word more properly refers to the drug or preparation than to the plant itself."

It is clear from the opinion, and particularly the part we have quoted, that in Louisiana the word "Maraguana" properly refers to the drug or product of the plant rather than to the plant itself. The same is true in Texas. *Gonzales* v. *State,* 108 Tex. Cr. R. 253, 299 S. W. 901; *Santos* v. *State* (Tex. Cr. App.) 53 S. W. (2d) 609.

Many of the states, by statute, prohibit possession or use of this drug under the name of cannabis, cannabis indica, or cannabis americana. In the states where the word "mariguana" is used in the statute, it is given the meaning we have attributed to it. Laws Colorado 1927, chap. 95, p. 309, § 1:

"That Cannabis Indicae, or Cannabis Sativa, commonly known as Indian Hemp, Hasheesh, or Marijuana, is hereby found and declared to be a habit-forming drug, the unrestricted use of which is injurious to the well-being of the users."

The Texas statute (Complete Texas Statutes 1928, art. 720, p. 1107 [Vernon's Ann. P. C. art. 720]).

"No person, firm or corporation shall sell, furnish, or give away cocaine, derivations of cocaine, preparations containing cocaine or derivatives of cocaine, morphine, derivations of morphine, preparations containing morphine or derivatives of morphine, opium, prepar-

ations containing opium, chloral hydrate or preparations containing cloral (chloral) hydrate, canabis (cannabis) indica, canabis (cannabis) sativa or preparations thereof or any drug or preparation from any canabis (cannabis) variety, or any preparation known as marijuana."

The New Mexico statute (Laws New Mexico 1923, c. 42, § 1, p. 58):

"It shall be unlawful to import into the State of New Mexico cannibas indica, also known as hashish and mariguana, in any form or any preparation or derivative thereof: Provided, That cannibas indica, also known as hashish and mariguana, may be imported for medicinal purposes only, and then only by licensed pharmacists and licensed physicians of the State of New Mexico."

The Montana act, Rev. Codes Mont. 1921, § 3186, as amended by Act of March 8, 1927, c. 91, § 1, reads as follows:

"It shall be unlawful for any person to sell, furnish, or dispose of any opium, morphine, alkaloid-cocaine, or alpha or beta eucaine, or codeine, or heroin, or mariahuana (Cannabis Indica), or any derivative, mixture, or preparation of any of them except upon the signed prescription of a physician or veterinarian duly licensed under the laws of the State. * * *"

In volume 23 of the Journal of Criminal Law and Criminology (1922), at page 1086, is an article entitled "marihuana" written by M. H. Hayes, of Friends' University, Wichita, Kan., and L. E. Bowery, of the Wichita, Kan., police department, from which we quote:

"Marihuana is referred to by Brundage's Toxicology as a drug the use of which results in 'a sense of exhilaration; pleasureable intoxication; peculiar prolongation of time; sense of double consciousness followed by drowsiness; anaesthesia; loss of power, particularly of the lower extremities; pupils dilated; pulse rapid; respiration slow; may cause increased sexual desires; catalepsy; sometimes convulsions.' It is known most generally in the United States by the Mexican name, 'Marihuana,' because it was introduced into this country by Mexicans."

In volume 2, American Journal of Police Science, at page 252, is an article entitled "Marihuana as a Developer of Criminals" by Eugene Stanley, district attorney, parish of

Orleans, New Orleans, La., wherein is contained a history of cannabis sativa, and while he has not nicely distinguished as to the meaning of the word "Mariguana," he states:

"It is the purpose of this article to give a brief outline of the nature and origin of Marihuana and the Legislation so far enacted concerning its sale and use; to recommend that this drug be placed within the provisions of the Harrison Anti-Narcotic Act [26 USCA §§ 211, 691-707] and to give a list of some of the works which may be consulted by any person interested in making a thorough study of the situation.

"Marihuana is the Mexican term for Cannabis Indica. The plant or drug known as Canabis Indica, or Marihuana, has as its parent the plant known as Cannabis Sativa. It is popularly known in India as Cannabis Indica; in America, as Cannabis Americana; in Mexico, as Cannabis Mexicana, or Marihuana. It is all the same drug, and is known in different countries by different names. It is scientifically known as Cannabis Sativa, and is popularly called Cannabis Americana, Cannabis Indica, or Cannabis Mexicana, in accordance with the geographical origin of the particular plant. In the East, it is known as Charras, as Gunga, as Hasheesh, as Bhang, or Siddi, and goes by a variety of names in the countries of continental Europe.

"In America, particularly in the South and Southwestern portions of the United States, it is called marihuana. It is popularly known among the criminal element as 'muggles,' or 'mooter' and addicts are commonly termed 'muggle heads.' "

While in some of the articles to which we have referred the word "mariguana" is used indiscriminately with reference to the plant, the drug, or the flowering tops and leaves of cannabis sativa, the preponderant use of the word, we think, is clearly with reference to the product ■ which is used for smoking. Such use is so frequent and common that no one can misunderstand when the statute prohibits its unauthorized possession or sale as a drug. The information in this case charges the unlawful possession of mariguana in the language of the statute, and that is sufficient.

The grammatical construction of the sentence in ■ the statute does not require a different definition of the term. Appellant's position is stated in his brief:

"From a grammatical standpoint, the amended statute would seem to be correct, and bear out the construction placed thereon by appellant. It will be noted that the words, to wit, 'Opium, morphine, codeine, heroin, peyote, alpha eucaine, beta eucaine, nova caine, flowering tops and leaves, extracts, tinctures, and other narcotic preparations,' are objects of the verbs, to wit: 'Sell, give away, or offer to sell, furnish, or give away, or to have in possession.' While the words, to wit, 'hemp or loco-weed, (Cannabis sativa, Indian Hemp), mariguana, or chloral hydrate,' are the objects of the preposition 'of.' No other conclusion can be reached when it is once understood that marihuana is a plant and not a narcotic drug."

Counsel have worked out a diagram of this sentence according to the rules of grammarians by which it is claimed the words "flowering tops and leaves, extracts, tinctures, and preparations" are modified by the words "hemp, loco weed, (cannabis sativa, Indian hemp), mariguana and chloral hydrate." If their contention is correct, the statute must be construed to prohibit possession of the flowering tops and leaves of chloral hydrate as well as of mariguana. This, however, is an impossible construction because chloral hydrate is unquestionably not a plant, but is a drug. It is described in United States Dispensatory (21st Ed.) p. 323, as follows:

" 'Chloral Hydrate contains not less than 99.5 per cent of $CCL_3$-$CHO.H_2O$.' U. S. 'Chloral Hydrate, $C_2Cl_3H_3O_2$, may be obtained by the addition of water to the liquid chloral, $C_2Cl_3HO$, produced by the action of dry chlorine gas on ethylic alcohol.' Br."

Before the statute was amended in 1927 by the insertion of the word "mariguana" after the words " (cannabis sativa, Indian Hemp)," and before the words "or chloral hydrate," the phrase "flowering tops and leaves," etc., was clearly intended to modify or apply to "hemp or loco weed," and not to "chloral hydrate." Had it been the legislative intent by the amendment of 1927 when the word "mariguana" was inserted to use such word as the name of a plant instead of a drug, undoubtedly the Legislature would have used some such language as this, "The mariguana plant or weed," instead of merely inserting the word "mariguana," which, as

we have seen, is commonly used to refer to the narcotic product of the plant cannabis sativa. By the rules of construction the relative or qualifying words are to be applied to the words immediately preceding or following, unless the legislative intent is indicated that a different application be made. 59 C. J. 985. There is not anything in the amendment of 1927 to indicate that the qualifying words were intended to be extended farther than in the original statute. Since the flowering tops and leaves of cannabis sativa, which is but the scientific name of the hemp plant or loco weed, constitute a drug known as cannabis and commonly known in this locality as mariguana, there was no necessity for the amendment except to clarify the statute by inserting the name by which the drug was commonly known by those who trafficked in, and used, mariguana. The character of its use in a section dealing with norcotic drugs indicates clearly that the word was intended to have its commonly understood meaning. We must be controlled by the evident purpose of the Legislature in view of the object sought to be attained. *State* v. *Hendrickson,* supra; *Richardson* v. *Treasure Hill M. Co.,* 23 Utah 366, 65 P. 74. It is obvious the Legislature intended to prohibit the unauthorized use of the narcotic drug or product known as mariguana. This being true, the court properly overruled the demurrer to the information and the objections made by the appellant on the ground of insufficiency of the information and of the evidence to sustain the verdict.

On the second point made by the appellant he must also fail. He contends it was incumbent on the state to produce evidence to prove the negative allegations of the information to the effect that the defendant did not have possession of the mariguana on a written order or prescription of a licensed physician, dentist, or veterinary surgeon, and that he was not a jobber, wholesaler, manufacturer, or other person lawfully entitled under the statute to have possession of mariguana. The rule is well stated in 49 C. J. at page 1053:

"Where the statute relating to poisons or narcotic drugs contains exceptions, a defendant desiring to avail himself of any of them by way of defense must show that he comes within its intent. Thus the burden is upon one accused of illegal possession to show that his possession was lawful under a proviso or exception of the statute under which he is being prosecuted, or, where the animus possidendi is an element of the offense, to show honest ignorance of the fact of possession."

See, also, *State* v. *Chin Gim*, 47 Nev. 431, 224 P. 798; *People* v. *Moronati*, 70 Cal. App. 17, 232 P. 991; and *People* v. *Montgomery*, 271 Ill. 580, 111 N. E. 578. This case falls within the rule stated in Corpus Juris and the above cases.

We find no error in the record. The judgment of the district court of Salt Lake county is affirmed.

ELIAS HANSEN, EPHRAIM HANSON, and MOFFAT, JJ., concur.

STRAUP, Chief Justice.

I concur. The act in question deals with the possession and use of "narcotic drugs." It provides that "it shall be unlawful for any person * * * to have in possession * * * mariguana," except those specified in the act. The information charged that the defendant unlawfully had in his possession "mariguana" and negatived the exceptions enumerated in the statute. The evidence shows that the defendant on a public street was possessed of a package of cigarettes done up in brown paper. Evidence was given to show that the defendant stated that the package "contained mariguana." The state chemist stated that the "cigarettes contained American Cannabis or mariguana," commonly known as a drug.

The point made is that under the statute it was not unlawful for any one to have "mariguana" in his possession. The statute says it is unlawful. In such particular it is contended that under the act it is unlawful only to possess the "flowering tops and leaves of mariguana." Should that be conceded, that was what the cigarettes contained, that was what the

defendant possessed. What is "mariguana"? Botanically or scientifically it is known as cannabis sativa. It is a plant. Cannabis often is spoken of as the dried flowering tops and the leaves of the plant. They contain the narcotic property or element of the plant. In different countries where the plant is cultivated it is known by different names. In Mexico it is known as "marihuana." The word "marihuana" often is spelled differently. I care not about that, they all mean the same thing. The proper spelling of the Mexican term probably is "marihuana," and is so spelled in the Standard Dictionary. It is there defined as "a narcotic plant reputed to cause insanity in persons drinking an infusion of its leaves or smoking them." It thus is the leaves and top blossoms of the plant which contain the narcotic properties of the plant, and it is the drinking of an infusion of them or smoking them which produces the injurious effects upon a person. To unlawfully possess them is unlawfully to possess mariguana. So, when the act deals with the general subject of the possession and use of "narcotic drugs" and declares it unlawful to possess "mariguana," it of necessity implies a possession of the narcotic properties and elements of the plant and not the possession of the mere stem or fiber of the plant from which coarse cloth and cordage are made.

Thus, when the term "mariguana," the name of which has its origin of derivation in Mexico, is used in the statute, it is there used in the popular sense of its narcotic properties or drug. Taking such view of the matter, I think the defendant was properly charged with having possession of mariguana, and upon the evidence properly convicted of having it in his possession.